# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN APPAREL, INC., *et al.*,[1] | Case No. 15-12055 (___) |
| Debtors. | (Joint Administration Requested) |

## APPLICATION FOR AN ORDER APPOINTING GARDEN CITY GROUP, LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), AND LBR 2002-1(f) *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), move pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), for entry of an order, substantially in the form of Exhibit C attached hereto (the "Section 156(c) Retention Order"), appointing Garden City Group, LLC ("GCG") as claims and noticing agent in the Debtors' chapter 11 cases *nunc pro tunc* to the Petition Date (as defined herein) (the "Section 156(c) Application"). In support of the Section 156(c) Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. sections 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. sections 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409.

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Apparel, Inc. (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The address of each of the Debtors is 747 Warehouse Street, Los Angeles, California, 90021.

DOCS_DE:202218.1 03636/001

...

## BACKGROUND

2. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors has been appointed in these cases.

3. The Debtors and their Non-Debtor affiliates operate a vertically integrated manufacturing, distribution, and retail business focused on branded fashion-basic apparel, employing approximately 8,500 employees across six manufacturing facilities and approximately 230 retail stores in the United States and 17 other countries worldwide. Additional information regarding the Debtors and these cases, including the Debtors' businesses, corporate structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of Mark Weinsten in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## RELIEF REQUESTED

4. This Section 156(c) Application is made pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, and Local Rule 2002-1(f), for an order appointing GCG to act as the claims and noticing agent *nunc pro tunc* to the Petition Date, in order to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Chapter 11 Cases. The Debtors' selection of GCG to act as the claims and noticing agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* in that the Debtors have obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to

ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that GCG's rates are competitive and reasonable given GCG's quality of services and expertise. The terms of retention are set forth in the Bankruptcy Administration Agreement attached hereto as Exhibit A (the "Engagement Agreement"); provided, however, that GCG is seeking approval solely of the terms and provisions as set forth in this Section 156(c) Application and the proposed Section 156(c) Retention Order attached hereto.

5. Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be in excess of 30,000 entities to be noticed. In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is necessary and in the best interests of both the Debtors' estates and their creditors.

6. As a specialist in claims management and legal administration services, GCG provides comprehensive administrative solutions for chapter 11 cases. GCG is one of the country's leading chapter 11 administrators, with substantial experience in matters of all sizes and levels of complexity, including several large bankruptcy cases filed in both this District and other districts: *In re Quicksilver Res. Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. March 17, 2015); *In re ProNerve Holdings, LLC*, No.-10373 (KJC) (Bankr. D. Del., Feb. 24, 2015; *In re AmCad Holdings, LLC,*, No. 14-12168 (MFW) (Bankr. D. Del. Sept. 19, 2014); *In re ZCO Liquidating Corp. (f/k/a OCZ Tech. Grp., Inc.)*, No. 13-13126 (PJW) (Bankr. D. Del. Dec. 2, 2013); *In re Savient Pharm., Inc.*, No. 13-12680 (MFW) (Bankr. D. Del. Oct. 14, 2013); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 23, 2013); *In re Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. June 10, 2013); *In re Cent. European*

*Distrib.. Corp.,* No. 13-10738 (CSS) (Bankr. D. Del. Apr. 7, 2013); *In re Geokinetics, Inc.,* No. 13-10472 (KJC) (Bankr. D. Del. Mar. 10, 2013).[2]

7. By appointing GCG as the claims and noticing agent in these chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the Clerk's Office will be relieved of the administrative burden of processing what may be an overwhelming number of claims. In support of this Section 156(c) Application, the Debtors submit GCG's declaration, attached hereto as Exhibit B (the "Ferrante 156(c) Declaration").

8. This Section 156(c) Application pertains only to the work to be performed by GCG under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f), and any work to be performed by GCG outside of this scope is not covered by this Section 156(c) Application or by any order granting approval hereof. Specifically, GCG will perform the following tasks in its role as claims and noticing agent (the "Claims and Noticing Services"), as well as all quality control relating thereto:

    (a) prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under Bankruptcy Code section 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

    (b) maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and any amounts owed thereto;

---

[2] Because of the voluminous nature of the cases referenced herein, orders granting GCG's retention are not attached to the Section 156(c) Application. Copies of such orders, however, are available on request of the Debtors' proposed counsel.

4

(c)   maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d)   furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)   maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)   for *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)   process all proofs of claim received, including those received by the Clerk's Office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)   maintain the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i)   implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j)   record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); provided, however, that if any

5

evidence of transfer of claim(s) is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to waive the 21-day notice and objection period required under Bankruptcy Rule 3001(e), then GCG may process the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

(k) relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to the offices of GCG, not less than weekly;

(l) upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(m) monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and make necessary notations on and/or changes to the Claims Registers;

(n) assist in the dissemination of information to the public, and respond to requests for administrative information regarding the Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(o) if the Chapter 11 Cases are converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to GCG of entry of the order converting the Chapter 11 Cases;

(p) thirty (30) days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing GCGand terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

(q) within seven (7) days of notice to GCG of entry of an order closing the Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases;

(r) at the close of these Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's Office; and

(s) provide such other related claims and noticing services as the Debtors may require in connection with these chapter 11 cases.

6

9. Additionally, to the extent any notice served is required to be given via regular mail, GCG will, before mailing the notice of commencement or key matrix mailings, run the list of creditors and equity security holders through (i) the National Change of Address software maintained by the United States Postal Service (the "USPS") and (ii) standardization and verification software that is CASS (Coding Accuracy Support System) certified by the USPS (clauses (i) and (ii) collectively, the "USPS Software") to update any addresses provided by the Debtors based on their books and records and to conform such records to USPS standards. If the USPS Software determines that a mailing address has changed, the Debtors propose that GCG shall mail documents to the updated address; provided, however, that GCG shall be under no obligation to mail to the original address. If mail is returned to GCG as undeliverable with a forwarding address, the Debtors propose that GCG shall re-mail the document to the new address and update its mailing database accordingly. If mail is returned to GCG as undeliverable with no forwarding address, the Debtors propose that GCG should be under no further obligation to mail any notices or other pleadings to that address.

10. The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained GCG.

11. GCG shall not employ any past or present employees of the Debtors for work that involves the Chapter 11 Cases.

12. The Debtors respectfully request that the undisputed fees and expenses incurred by GCG in the performance of the above Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.

13.    GCG agrees to maintain records of all Claims and Noticing Services, including showing dates, categories of Claims and Noticing Services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

14.    Prior to the Petition Date, the Debtors provided GCG a retainer in the amount of $125,000. GCG seeks to apply the retainer to all pre-petition invoices. GCG also seeks to thereafter hold the retainer under the Engagement Agreement during these chapter 11 cases to apply against unpaid fees and expenses incurred in performing services for the Debtors under the Engagement Agreement.

15.    As part of the overall compensation payable to GCG under the terms of the Engagement Agreement, the Debtors have agreed, subject to certain exceptions, to indemnify and hold harmless GCG and its directors, officers, employees, affiliates, and agents, against any losses incurred by GCG arising out of, in connection with, or related to (a) judicially determined (i) gross negligence or willful misconduct by the Debtors, their employees, agents, or representatives, or (ii) intentional misrepresentations made by such persons to third parties in connection with GCG's acts or omissions in connection with its rendering the Services (as defined in the Engagement Agreement); or (b) any erroneous instructions or information provided to GCG by any of the Debtors for use in providing services pursuant to the Engagement Agreement. Notwithstanding anything to the contrary in the Engagement Agreement, however,

8

the Debtors shall have no obligation to indemnify GCG, or provide contribution or reimbursement to GCG, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from GCG's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of GCG's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which GCG should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement.

16. In connection with its retention as claims and noticing agent, GCG represents in the Ferrante 156(c) Declaration, among other things, that:

   (a) GCG will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Chapter 11 Cases;

   (b) by accepting employment in the Chapter 11 Cases, GCG waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

   (c) in its capacity as claims and noticing agent in the Chapter 11 Cases, GCG will not be an agent of the United States and will not act on behalf of the United States; and

   (d) GCG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

17. To the extent that there is any inconsistency between this Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

18. Should GCG discover any new relevant factors or relationships bearing on the matters described herein during the period of its retention, GCG will use reasonable efforts to file promptly a supplemental declaration.

19. This Section 156(c) Application complies with the *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* and conforms to the standard section 156(c) application in use in this Court.

## NOTICE

20. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates; (c) counsel to Standard General L.P. and its affiliates; (d) counsel to U.S. Bank, N.A., in its capacity as the trustee under the indenture governing the Debtors' secured notes; (e) Milbank, Tweed, Hadley & McCloy LLP, as counsel to an ad hoc group of noteholders; (f) counsel to Wilmington Trust, National Association, as agent to the lenders under the Debtor-in-Possession Agreement and as administrative agent for the Debtors' ABL Facility; and (g) the Internal Revenue Service and the Securities and Exchange Commission. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

21. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors request entry of the 156(c) Retention Order, in the form attached hereto as <u>Exhibit C</u>, authorizing Garden City Group, LLC to act as claims and noticing agent for the maintenance and processing of claims and the distribution of notices.

Dated: October 5, 2015

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302-652-4400
Email:    ljones@pszjlaw.com
          joneill@pszjlaw.com
          jmulvihill@pszjlaw.com

and

JONES DAY
Richard L. Wynne (CA Bar No. 149504)
Erin N. Brady (CA Bar No. 215038)
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:    (213) 489-3939
Facsimile:    (213) 243-2539
Email:        rlwynne@jonesday.com
              enbrady@jonesday.com

and

Scott J. Greenberg (NY Bar No. SG-2881)
222 East 41st Street
New York, NY 10017
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306
Email:        sgreenberg@jonesday.com

Proposed Co-Counsel for the Debtors and Debtors in Possession

11