## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMERICAN APPAREL, INC., *et al.*,[1] | : | Case No. 15-12055 (___) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

## MOTION FOR INTERIM AND FINAL ORDERS ESTABLISHING ADEQUATE ASSURANCE PROCEDURES WITH RESPECT TO DEBTORS' UTILITY PROVIDERS

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

move the Court pursuant to section 366 of the Bankruptcy Code and Local Bankruptcy Rule

9013-1(m) for the entry of interim and final orders (in substantially the forms attached as Exhibit

B and Exhibit C, respectively): (i) establishing procedures for addressing any requests that a

utility company may make for additional assurance of payment (collectively, the "Utility

Companies" and each, individually, a "Utility Company"); (ii) prohibiting the Utility Companies

from altering, refusing or discontinuing services to, or discriminating against the Debtors; (iii)

approving an adequate assurance deposit as adequate assurance of post-petition payment to the

Utility Companies; and (iv) granting certain related relief.  In support of this motion, the Debtors

respectfully represent as follows:

---

[1]  The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  American Apparel, Inc. (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870).  The address of each of the Debtors is 747 Warehouse Street, Los Angeles, California, 90021.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. sections 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. section 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committee of unsecured creditors has been appointed in these cases.

3.      The Debtors and their Non-Debtor affiliates operate a vertically integrated manufacturing, distribution, and retail business focused on branded fashion-basic apparel, employing approximately 8,500 employees across six manufacturing facilities and approximately 230 retail stores in the United States and 17 other countries worldwide. Additional information regarding the Debtors and these cases, including the Debtors' businesses, corporate structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of Mark Weinsten in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

### A.      The Utility Companies

4.      The Debtors currently use various types of utility services, including, but not limited to, electricity, natural gas, telecommunications, trash removal, water and sewer (collectively, the "Utility Services") provided by the Utility Companies such as those

identified on Exhibit A attached hereto (the "Utility Service List").[2]  The Debtors estimate

that their average monthly obligations to the Utility Companies on account of services

rendered total approximately $1.2 million.

5.      Uninterrupted service from the Utility Companies is essential to the Debtors'

ongoing operations and to preserving value for all interested stakeholders.  The Debtors

operate five manufacturing facilities and more than 130 retail stores across the United States.

For the Debtors to preserve the value of their estates, their manufacturing facilities, retail

stores and related operations must continue to operate without interruption.  Any temporary or

permanent discontinuation of utility services could irreparably disrupt the Debtors' business

operations and diminish recoveries to the Debtors' stakeholders.

6.      The Debtors appreciate that section 366(c)(2) of the Bankruptcy Code requires

them to provide the Utility Companies with adequate "assurance of payment" within thirty

days of the commencement of these cases to prevent a utility from altering, refusing or

discontinuing a chapter 11 debtor's utility service.  The Debtors propose to satisfy the

requirement to provide "adequate assurance" in two ways.  First, they intend to pay any post-

petition obligations to the Utility Companies in a timely fashion and in the ordinary course.

To that end, the Debtors have budgeted for the payments and will make them from their cash

reserves as of the Petition Date and/or through anticipated access to a debtor in possession

financing facility.

---

[2]      For each Utility Company, Exhibit A identifies, to the extent known: (i) the name and type of
service of the Utility Company; and (ii) the address and contact information for the Utility Company.  The inclusion
of any entity on, or any omission of any entity from, Exhibit A is not an admission by the Debtors that such entity is
or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve their rights
with respect thereto.  In addition, the Debtors are requesting that this motion apply to all their utility companies,
whether or not any given utility company is included on the Utility Service List.

7.      Second, the Debtors also propose to deposit, as adequate assurance of payment, approximately $500,000 into a newly created, segregated, interest bearing account (the "Adequate Assurance Deposit") within 20 days of the Petition Date.  The Adequate Assurance Deposit equals approximately two weeks of the Debtors' estimated utility expenses, net of any prepetition deposits, letters of credit, surety bonds or other similar forms of adequate assurance already provided to the Utility Companies.  The Debtors submit that the Adequate Assurance Deposit, together with the Debtors' ability to pay for future utility services in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy Code.

## RELIEF REQUESTED

8.      The Debtors request authority to make the Adequate Assurance Deposit to satisfy their obligations to provide adequate assurance to Utility Companies under section 366 of the Bankruptcy Code.  The Debtors further request that the Court require any Utility Companies seeking additional assurance to follow the procedures set forth below and subject to any order approving the Debtors' postpetition financing facility (the "DIP Order") and the documentation in respect of the postpetition financing facility (the "DIP Documents").

**A.      The Adequate Assurance Procedures**

9.      To address the right of any Utility Company under section 366(c)(2) of the Bankruptcy Code to seek additional adequate assurance satisfactory to it, the Debtors propose to adopt and follow the following procedures (the "Adequate Assurance Procedures"):

a.      Any Utility Company desiring assurance of future payment for utility service beyond the Proposed Adequate Assurance must serve a request (an "Additional Assurance Request") at the following addresses: (i) American Apparel, Inc., 747 Warehouse St., Los Angeles, California 90021 (Attn: Lance Miller); (ii) Jones Day, 555 S. Flower St., 50th Floor, Los Angeles,

- 4 -

CA 90071 (Attn: Richard L. Wynne, Esq. and Erin Brady, Esq.); and (iii) Pachulski, Stang, Ziehl and Jones, 919 N. Market St., # 1700, Wilmington, DE 19801, (Attn: Laura Davis Jones, Esq.) (collectively, the "Notice Parties").

b.      Any Additional Assurance Request must: (i) be made in writing; (ii) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company; (iii) set forth the location(s) for which utility services are provided and the relevant account number(s); (iv) describe any deposits, prepayments or other security currently held by the requesting Utility Company; (v) describe any payment delinquency or irregularity by the Debtors for the postpetition period, if any; and (vi) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

c.      If an Additional Assurance Request is timely delivered upon the Notice Parties, the Debtors shall have the greater of (i) twenty-one days from receipt of such Additional Assurance Request or (ii) thirty days from the Petition Date (such greater period, the "Resolution Period") to negotiate with the requesting Utility Company to resolve its Additional Assurance Request. The Resolution Period may be extended by agreement of the Debtors and the applicable Utility Company without application to or approval of the Court.

d.      The Debtors are authorized to resolve, in their discretion, any Additional Assurance Request by mutual agreement with the requesting Utility Company without further order of the Court and, in connection with any such agreement and in their discretion, may provide the requesting Utility Company with alternative adequate assurance of payment including cash deposits, prepayments, or other forms of security, if the Debtors believe such alternative assurance is reasonable.

e.      If the Debtors determine that an Additional Assurance Request is not reasonable and the parties are not able to resolve such request during the Resolution Period, the Debtors will request a hearing before the Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "Determination Hearing"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

f.      Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such a request may not discontinue, alter or refuse service to the Debtors on account of unpaid charges for prepetition services or an alleged lack of adequate assurance of payment.

## B.        Modifications to the Utility Service List

10.        If the Debtors identify additional Utility Companies—or determine that a company was improperly designated as a utility—the Debtors seek authority, in their discretion, to add or remove parties from the Utility Service List. The Debtors will promptly serve on any Utility Company that is subsequently added to the Utility Service List (a "Subsequently Added Utility"), a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures, and will increase the Adequate Assurance Deposit by an amount equal to two weeks of the Debtors' average cost of services from the Subsequently Added Utility. For any Utility Company that is subsequently removed from the Utility Service List, the Debtors will decrease the Adequate Assurance Deposit by an amount equal to two weeks of the Debtors' average cost of services from the removed Utility Company.

11.        Any Subsequently Added Utility shall have 14 days from the date of service of the order to make an Additional Assurance Request. The Debtors shall then have the Resolution Period to resolve any Subsequently Added Utility's Additional Assurance Request by mutual agreement without further order of this Court, or to schedule a Determination Hearing with this Court. The Debtors request that the terms of any order approving this motion, and the Adequate Assurance Procedures set forth therein, apply to any Subsequently Added Utility. The Debtors further request that all Utility Companies, including Subsequently Identified Utilities, be prohibited from altering, refusing or discontinuing utility services to the Debtors absent further order of this Court.

## BASIS FOR RELIEF REQUESTED

12.        Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may not alter, refuse or discontinue a chapter 11 debtor's utility service if the utility receives from the debtor

or the trustee adequate "assurance of payment" within thirty days of the commencement of the debtor's chapter 11 cases.[3] The policy underlying section 366 of the Bankruptcy Code is to protect a debtor from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate "assurance of payment" for postpetition utility service. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

13.    Section 366(c)(1) of the Bankruptcy Code defines "assurance of payment" to mean several enumerated forms of security (*e.g.*, cash deposits, letters of credit, prepayment for utility service) while excluding from the definition certain other forms of security (e.g., administrative expense priority for a utility's claim).  In addition, section 366(c)(3)(B) of the Bankruptcy Code provides that a court may not consider certain facts (e.g., a debtor's prepetition history of making timely payments to a utility) in making a determination of adequate assurance of payment.

14.    While section 366(c) of the Bankruptcy Code clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting that section, did not divest the Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a

---

[3]    There is an apparent discrepancy between subsections (b) and (c) of section 366 of the Bankruptcy Code because these two subsections set forth different time periods during which a utility is prohibited from altering, refusing or discontinuing utility service. Specifically, section 366(b) of the Bankruptcy Code allows a utility to alter, refuse or discontinue service "if neither the trustee nor the debtor, within *20 days* after the date of the order for relief, furnishes adequate assurance of payment," while section 366(c)(2) of the Bankruptcy Code allows a utility in "a case filed under chapter 11" to alter, refuse or discontinue service to a chapter 11 debtor "if during the *30-day period* beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service . . . ." (emphases added).

Under the statutory construction canon *lex specialis derogat legi generali* ("specific language controls over general"), the language of section 366(c)(2) controls here because the Debtors are chapter 11 debtors. *See* 3 *Collier on Bankruptcy* § 366.03[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("It is unclear how the 30-day period [in section 366(c)(2) of the Bankruptcy Code] meshes with the normal 20-day period in section 366(b).  The better view is that, because section 366(c) is more specifically applicable to chapter 11 cases, the 30-day period, rather than the 20-day period in section 366(b), should apply.").

Utility Company. Indeed, section 366(c) of the Bankruptcy Code not only fails to establish a minimum amount of adequate "assurance of payment," but explicitly empowers the Court to determine the appropriate level of adequate assurance required in each case and permits a party in interest to request modification of the amount of adequate assurance after notice and a hearing. *See* 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment . . . .").

15.     Thus, for instance, there is nothing within section 366 of the Bankruptcy Code that prevents a court from ruling that, on the facts of the case before it, the amount required to adequately assure future payment to a utility company is nominal, or even zero. Prior to the enactment of section 366(c) of the Bankruptcy Code, courts enjoyed precisely the same discretion to make such rulings pursuant to section 366(b) of the Bankruptcy Code, and frequently did. *See Virginia Elec. & Power Co. v. Caldor, Inc.– NY*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

16.     Moreover, the requirement under the Bankruptcy Code is only that the assurance of payment be "adequate." Courts construing section 366(b) of the Bankruptcy Code have long recognized that "adequate" assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g., In re Caldor, Inc.– NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The

statute does not require an 'absolute guarantee of payment.') (citation omitted), *aff''d sub nom. Virginia Elec. & Power Co. v. Caldor, Inc. – NY*, 117 F.3d 646 (2d Cir. 1997); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (same); *Steinebach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . all § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment."); *In re Penn Jersey Corp.*, 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that section 366(b) of Bankruptcy Code "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances").[4] Therefore, despite its language allowing a utility to take adverse action against the debtor should the debtor fail to provide adequate assurance of future payment "satisfactory to the utility," section 366 of the Bankruptcy Code does not require that the assurance provided be "satisfactory" once a debtor seeks to have a court determine the appropriate amount of adequate assurance.

17.    The Debtors submit that the entry of an interim and final order approving this motion is consistent with, and fully satisfies, the requirements of section 366 of the Bankruptcy Code. Far from offering the Utility Companies nominal (or even no) additional assurance of payment, the Debtors propose to (i) place a cash deposit into an account for the Utility Companies' benefit, and (ii) establish procedures pursuant to which the Utility Companies can seek greater or different security. Such assurance of payment should

---

[4]    Courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and [to] require that the debtor supply <u>no more than that</u>, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Caldor*, 117 F.3d at 650 (emphasis in original) (quoting *Penn Jersey*, 72 B.R. at 985).

significantly alleviate, if not eliminate, any concern of non-payment on the part of the Utility Companies, and is thus "adequate."

18.    Similar relief has been granted in other cases in this District. *See, e.g., In re Old FENM, Inc.*, Case No. 13-12569 (KJC) (Bankr. D. Del. Oct. 23, 2013) (ordering that the debtors shall deposit approximately two weeks of their average utility liabilities into a segregated account); *In re MSD Performance, Inc.*, Case No. 13-12286 (PJW) (Bankr. D. Del. Oct. 1, 2013) (same); *In re OnCure Holdings, Inc.*, Case No. 13-11540 (KG) (Bankr. D. Del. June 18, 2013) (same); *In re Orchard Supply Hardware Stores Corp.*, Case No. 13-11565 (CSS) (Bankr. D. Del. June 18, 2013) (same); *In re Highway Techs., Inc.*, Case No. 13-11326 (KJC) (Bankr. D. Del. June 10, 2013) (same); *In re Rotech Healthcare, Inc.*, Case No. 13-10741 (PJW) (Bankr. D. Del. May 7, 2013) (same); *In re Synagro Techs., Inc.*, Case No. 13-11041 (BLS) (Bankr. D. Del. Apr. 25, 2013) (same); *In re Powerwave Techs., Inc.*, Case No. 13-10134 (MFW) (Bankr. D. Del. Jan. 31, 2013) (same).

## REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

19.    Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek immediate entry of an order that, inter *alia,* prohibits the Utility Companies from altering, refusing or discontinuing services to, or discriminating against the Debtors, and approves an Adequate Assurance Deposit as adequate assurance of postpetition payment to the Utility Companies (the "Interim Order").

20.    Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates,

the Court may allow the Debtors to pay all or part of a claim that arose before the Petition

Date prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h)

provides that "[a]n order authorizing the use, sale, or lease of property other than cash

collateral is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise."

      21.     It is imperative that the Utility Providers continue to provide utility services in

the ordinary course of business.  Failure to do so would likely result in immediate and

irreparable harm to the Debtors' operations, customer relationships, revenues, and profits.

The Adequate Assurance Deposit and the Adequate Assurance Procedures will provide the

Debtors with the ability to maintain continued utility service and prevent immediate and

irreparable damage to the Debtors' operations.  Accordingly, the Debtors submit that ample

cause exists to justify: (i) the immediate entry of the Interim Order granting the relief sought

herein on an interim basis pursuant to Bankruptcy Rule 6003(b); and (ii) a waiver of the

fourteen-day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

      22.     Notice of this motion shall be given to (a) the Office of the United States

Trustee for the District of Delaware; (b) those creditors holding the 30 largest unsecured

claims against the Debtors' estates; (c) counsel to Standard General L.P. and its affiliates; (d)

counsel to U.S. Bank, N.A., in its capacity as the trustee under the indenture governing the

Debtors' secured notes; (e) Milbank, Tweed, Hadley & McCloy LLP, as counsel to an ad hoc

group of noteholders; (f) counsel to Wilmington Trust, National Association, as agent to the

lenders under the Debtor-in-Possession Agreement and as administrative agent for the

Debtors' ABL Facility; and (g) the Internal Revenue Service and the Securities and Exchange

Commission.  As this Motion is seeking "first day" relief, within two business days of the

hearing on this Motion, the Debtors will serve copies of this motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

23.     No prior request for the relief sought herein has been made to this Court or any other court.

**[Remainder of page intentionally left blank]**

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and the Final Order.

Dated:  October 5, 2015

PACHULSKI STANG ZIEHL & JONES LLP

*Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302)-652-4400
Email:     ljones@pszjlaw.com
           joneill@pszjlaw.com
           jmulvihill@pszjlaw.com

and

JONES DAY
Richard L. Wynne (CA Bar No. 149504)
Erin N. Brady (CA Bar No. 215038)
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539
Email:      rlwynne@jonesday.com
            enbrady@jonesday.com

and

Scott J. Greenberg (NY Bar No. SG-2881)
222 East 41st Street
New York, NY 10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:      sgreenberg@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession