# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN APPAREL, INC., *et al.*,[1] | Case No. 15-12055 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 4** |

## ORDER AUTHORIZING RETENTION AND APPOINTMENT OF GARDEN CITY GROUP, LLC AS CLAIMS AND NOTICING AGENT UNDER 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), AND LBR 2002-1(f) *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the *Application for an Order Appointing Garden City Group, LLC as Claims and Noticing Agent for the Debtors Pursuant To 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), And LBR 2002-1(f) Nunc Pro Tunc To The Petition Date* (the "Section 156(c) Application")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") for an order authorizing the retention and appointment of Garden City Group, LLC ("GCG") as claims and noticing agent under 28 U.S.C. §156(c), Bankruptcy Code section 105(a), and LBR 2002-1(f) *nunc pro tunc* to the Petition Date, to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtors' chapter 11 cases, and (iii) provide such other administrative services – as required by the Debtors – that would fall within the purview of services to be provided by the Clerk's Office; and upon the Ferrante 156(c) Declaration submitted in support of the Section

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Apparel, Inc. (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The address of each of the Debtors is 747 Warehouse Street, Los Angeles, California, 90021.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

156(c) Application; and the Debtors having estimated that there are in excess of 29,000 creditors in these chapter 11 cases, many of which are expected to file proofs of claim; and it appearing that the receiving, docketing, and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. § 156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy, and transmit proofs of claim; and the Court being satisfied (i) that GCG has the capability and experience to provide such services, and (ii) that GCG does not hold an interest adverse to the Debtors or the estates with respect the matters upon which it is to be engaged; and good and sufficient notice of the Section 156(c) Application having been given; and no other or further notice being required; and it appearing that the employment of GCG is in the best interests of the Debtors, their estates and creditors; and sufficient cause appearing therefor; it is hereby:

ORDERED, that, notwithstanding the terms of the Bankruptcy Administration Agreement attached to the Section 156(c) Application as <u>Exhibit A</u> (the "<u>Engagement Agreement</u>"), the Section 156(c) Application is approved solely as set forth in this Order; and it is further

ORDERED, that the Debtors are authorized to retain GCG *nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and GCG is authorized to perform the following tasks in its role as claims and noticing agent (the "<u>Claims and Noticing Services</u>"), as well as all quality control relating thereto:

    (a)    prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under Bankruptcy Code section 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors'

plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

(b) maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and any amounts owed thereto;

(c) maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d) furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f) for *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g) process all proofs of claim received, including those received by the Clerk's Office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h) maintain the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim,

(iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i) implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j) record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); <u>provided, however,</u> that if any evidence of transfer of claim(s) is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to waive the 21-day notice and objection period required under Bankruptcy Rule 3001(e), then GCG may process the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

(k) relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to the offices of GCG, not less than weekly;

(l) upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(m) monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and make necessary notations on and/or changes to the Claims Registers;

(n) assist in the dissemination of information to the public, and respond to requests for administrative information regarding the Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(o) if the Chapter 11 Cases are converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to GCG of entry of the order converting the Chapter 11 Cases;

(p) thirty (30) days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing GCGand terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

(q) within seven (7) days of notice to GCG of entry of an order closing the Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases;

(r) at the close of these Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's Office; and

(s) provide such other related claims and noticing services as the Debtors may require in connection with these chapter 11 cases; and it is further

ORDERED, that GCG shall serve as the custodian of Court records, shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk; and it is further

ORDERED, that GCG is authorized to obtain a post office box or address for the receipt of proofs of claim; and it is further

ORDERED, that GCG is authorized to take such other action to comply with all duties set forth in this Order; and it is further

ORDERED, that the Debtors are authorized to compensate GCG in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the Claims and Noticing Services provided by GCG and the rates charged for each, and to reimburse GCG for all reasonable and necessary expenses it may incur upon the presentation of appropriate documentation, without the need for GCG to file fee applications or otherwise seek Court approval for the compensation for the Claims and Noticing Services and reimbursement of its expenses; and it is further

ORDERED, that GCG shall maintain records of all Notice and Claims Services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party-in-interest who

specifically requests service of the monthly invoices; and it is further

ORDERED, that GCG shall record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e), and if the evidence of transfer or notice of such transfer executed by the parties purports to waive the 21-day notice and objection period required by Bankruptcy Rule 3001(e), then GCG may process the transfer of claim to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case; and it is further

ORDERED, that to the extent any notice served is required to be given via regular mail, GCG shall, before mailing the notice of commencement or key matrix mailings, run the list of creditors and equity security holders through (i) the National Change of Address Software maintained by the United States Postal Service (the "USPS") and (ii) standardization and verification software that is CASS (Coding Accuracy Support System) certified by the United States Postal Service (clauses (i) and (ii) collectively, the "USPS Software") to update any addresses provided by the Debtors based on their books and records and to conform such records to USPS standards. If the USPS Software determines that a mailing address has changed, GCG shall mail documents to the updated address and is under no obligation to mail to the original address. If mail is returned to GCG as undeliverable with a forwarding address, GCG shall re-mail the document to the new address and update its mailing database accordingly. If mail is returned to GCG as undeliverable with no forwarding address, GCG shall be under no further obligation to mail any notices or other pleadings to that address; and it is further

ORDERED, that the parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices, and that the parties

may seek resolution of the matter from the Court if resolution is not achieved; and it is further

ORDERED, that pursuant to Bankruptcy Code section 503(b)(1)(A), the fees and expenses of GCG under this Order shall be an administrative expense of the Debtors' estates; and it is further

ORDERED, that GCG may apply its retainer to all prepetition invoices, and thereafter, GCG may hold its retainer under the Engagement Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

ORDERED, that except to the extent set forth below, the Debtors are authorized to indemnify GCG under the terms of the Engagement Agreement; and it is further

ORDERED, that GCG shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the Claims and Noticing Services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court; and it is further

ORDERED, that notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify GCG, or provide contribution or reimbursement to GCG, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from GCG's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of GCG's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Claims

and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order; and it is further

ORDERED, that if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these chapter 11 cases, GCG believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, GCG must file an application therefor in this Court, and the Debtors may not pay any such amounts to GCG before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by GCG for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify GCG. All parties in interest shall retain the right to object to any demand by GCG for indemnification, contribution, or reimbursement; and it is further

ORDERED, that in the event GCG is unable to provide the services set out in this Order, GCG will immediately notify the Clerk and Debtors' attorney, and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' attorney; and it is further

ORDERED, that the Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by GCG but is not specifically authorized by this Order; and it is further

ORDERED, that the Debtors and GCG are authorized to take all actions necessary to

effectuate the relief granted pursuant to this Order in accordance with the Section 156(c) Application; and it is further

ORDERED, that, notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order; and it is further

ORDERED, that the requirements set forth in Local Rule 9013-1(b) are satisfied by the contents of the Section 156(c) Application; and it is further

ORDERED, that GCG shall not cease providing claims processing services during the chapter 11 cases for any reason, including nonpayment, without an order of the Court; and it is further

ORDERED, that in the event of any inconsistency between the Engagement Agreement, the Section 156(c) Application, and this Order, this Order shall govern.

Dated: Oct 6, 2015
Wilmington, Delaware

Honorable Brendan L. Shannon
United States Bankruptcy Judge