# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| AMERICAN APPAREL, INC., *et al.*,[1] | : | Case No. 15-12055 (BLS) |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING PURSUANT TO 11 U.S.C. §§ 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e) AND 507 AND (B) UTILIZE CASH COLLATERAL, (II) AUTHORIZING THE REPAYMENT IN FULL OF AMOUNTS OWED UNDER THE PREPETITION ABL CREDIT FACILITY, (III) GRANTING PRIMING LIENS, PRIORITY LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDERS, (IV) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES, (V) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c) AND (VI) GRANTING RELATED RELIEF

Upon the motion dated October 5, 2015 (the "Motion")[2] of American Apparel, Inc. ("American Apparel") and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Cases"), for entry of an interim order (this "Interim Order") and a final order ("Final Order"), under sections 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, *inter alia*:

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Apparel, Inc. (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The address of each of the Debtors is 747 Warehouse Street, Los Angeles, California, 90021.

[2] Any capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

(i)     (A) authorization for American Apparel (USA), LLC. ("AA LLC" or the "Borrower") and certain other borrower parties (together with AA LLC, the "Borrowers") to obtain senior secured postpetition financing in an aggregate principal amount not to exceed $90 million (the "DIP Credit Facility"), pursuant to section 364 of the Bankruptcy Code, and (B) authorization for the Guarantors (as defined in the DIP Credit Agreement (as defined below)) to guarantee the Borrowers' obligations under the DIP Credit Facility, in each case, pursuant to the terms of this Interim Order, the Final Order and that certain Debtor in Possession Credit Agreement, dated as of October 4, 2015, by and among, *inter alia*, the Borrower, the Guarantors, Wilmington Trust, National Association ("Wilmington Trust") as administrative agent and collateral agent (in such capacities, the "DIP Agent") and the lenders party thereto from time to time (collectively, the "DIP Lenders"), in substantially the form attached hereto as Exhibit A (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and this Interim Order, the "DIP Credit Agreement"), and any related documents required to be delivered by or in connection with the DIP Credit Agreement (collectively, the "DIP Credit Documents");

(ii)    authorization for the Debtors to execute and enter into the DIP Credit Documents and to perform such other and further acts as may be required in connection with the DIP Credit Documents;

(iii)   authorization for the Debtors to grant security interests, liens and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the

Bankruptcy Code) in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, to secure the repayment of all obligations of the Debtors under and with respect to the DIP Credit Facility and the DIP Credit Documents;

(iv)     authorization for the Debtors' use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) constituting Collateral under the Prepetition ABL Facility (as defined in the DIP Credit Agreement) and under the Prepetition Notes Indenture, on the terms and conditions set forth in this Interim Order and in the DIP Credit Documents;

(v)     authorization for the Debtors to provide adequate protection of the liens and security interests of (i) Prepetition ABL Lenders and Prepetition ABL Agent under the Prepetition ABL Facility (as defined in the DIP Credit Agreement) (collectively, the "Prepetition ABL Liens"), and (ii) holders of the Prepetition Senior Notes (as defined in the DIP Credit Agreement) and the Prepetition Senior Notes Trustee (as defined in the DIP Credit Agreement) (the "Prepetition Senior Notes Liens", and together with the Prepetition ABL Liens, the "Prepetition Liens"), which Prepetition Liens are either being satisfied and released or primed by the liens securing the repayment of the DIP Credit Facility in accordance with this Interim Order and the DIP Credit Agreement;

(vi)     authorization for the Borrower to use Cash Collateral and the proceeds from the DIP Credit Facility upon entry of this Interim Order (a) to pay in full, as a condition to closing the DIP Credit Facility, the outstanding balance of all Prepetition ABL Obligations, including the unpaid fees, costs and expenses and indemnification rights of each of the Prepetition ABL Agent (including, without limitation, in its capacity as "Collateral Agent" under the Prepetition ABL Facility) and the committee of certain

lead lenders under the Prepetition ABL Credit Facility represented by Milbank Tweed Hadley & McCloy LLP (the "Committee of Lead Lenders"), whether incurred prior or subsequent to the Commencement Date (the "Prepetition Agreement Expenses"); (b) to pay related postpetition transaction costs, fees and expenses with respect to the DIP Facility; (c) to provide working capital, and for other general corporate purposes of the Credit Parties (as defined in the DIP Credit Agreement), (d) to fund the Carve-Out, and (e) to pay administration costs of the Chapter 11 Cases and claims or amounts approved by the Bankruptcy Court;

(vii)    modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Senior Notes Trustee, and holders of the Prepetition Senior Notes, to implement the terms of this Interim Order;

(viii)   an emergency interim hearing (the "Interim Hearing") on the Motion for the Court to consider entry of this Interim Order, which authorizes the Borrowers to borrow under the DIP Credit Documents, on an interim basis, up to an aggregate principal or face amount not to exceed $10 million plus amounts necessary to effect the Prepetition ABL Refinancing (as defined below);

(ix)     the scheduling of a final hearing (the "Final Hearing") on the Motion to consider entry of a Final Order authorizing the borrowings under the DIP Credit Documents on a final basis and approval of notice procedures with respect thereto; and

(x)      the granting of certain related relief.

The Interim Hearing having been held by this Court on October [___], 2015; and the Court having considered the Motion and all pleadings related thereto, including the record made at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

## THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[3]

A.    On October 5, 2015 (the "Commencement Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Cases are being jointly administered for procedural purposes only under case number 15-_____ (____).

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The Debtors have provided notice of the Motion and the Interim Hearing by facsimile, electronic mail or overnight mail to: (i) the United States Trustee for Region 3, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane Leamy, Esq.; (ii) the Internal Revenue Service, Centralized Insolvency Operations, 11601 Roosevelt Boulevard, Mail Drop N781, Philadelphia, Pennsylvania 19255; (iii) all relevant state and local taxing authorities; (iv) the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530; (v) the Securities Exchange Commission, Attn: General Counsel, 100 F Street NE, Washington, DC 20549; (vi) the parties listed in the

---

[3] The findings and conclusions set forth in this Interim Order constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in the Cases (collectively, the "Top 30 Creditors"); (vii) counsel to the DIP Agent and the Prepetition ABL Agent, Covington & Burling LLP, 620 Eighth Avenue, New York, New York 10018, Attn: Ronald Hewitt, Esq.; (viii) counsel to Standard General, L.P., Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022, Attn: M. Natasha Labovitz, Esq.; (ix) counsel to the Committee of Lead Lenders, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York 10005, Attn: Gerard Uzzi and Bradley Scott Friedman, and Fox Rothschild LLP, Wilmington, 919 North Market Street, Suite 300, P.O. Box 2323, Wilmington, Delaware 19899-2323, Attn: Jeffrey M. Schlerf, Esq.; (x) all entities known or reasonably believed to have asserted a security interest or lien against the Debtors; and (xi) all parties having filed requests for notice in the Cases (the parties set forth in the preceding clauses (i) through (xi), collectively, the "Notice Parties"). Given the nature of the relief sought in the Motion, the Court concludes that no further notice is necessary for entry of this Interim Order.

D.     No official committee of unsecured creditors (upon the appointment thereof, the "Committee"), as provided for under section 1102 of the Bankruptcy Code, has been appointed in the Cases.

E.     Subject to paragraph 27 below, the Debtors hereby admit, stipulate and agree that:

(1)     Prepetition ABL Facility: Pursuant to the Prepetition ABL Documents (as defined in the DIP Credit Agreement), the Prepetition ABL Lenders agreed to extend a revolving credit facility to, and issue fully cash collateralized letters of credit for, the Borrowers from time to time, including, *inter alia*, the Prepetition ABL Obligations in an aggregate principal committed amount of up to $90 million (the "Prepetition ABL Loans"). All obligations of the

Debtors arising under the Prepetition ABL Documents, including all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition ABL Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition ABL Agent or Prepetition ABL Lenders by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and specifically including the Prepetition Agreement Expenses, shall hereinafter be referred to as the "Prepetition ABL Obligations."

(2)     Pursuant to certain Prepetition ABL Documents (the "Prepetition Collateral Documents"), including that certain Security Agreement, dated as of April 4, 2013, and entered into by and among the Prepetition ABL Agent (as successor to Capital One Business Credit under the Prepetition ABL Agreement), for the benefit of itself and the Prepetition Lenders, the Borrowers and each other party signatory thereto (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition ABL Security Agreement"), each Debtor granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition Lenders, to secure such Prepetition ABL Obligations, a security interest in and continuing lien on all of such Debtor's assets (subject to certain exceptions agreed by the parties thereto as set forth in the Prepetition ABL Security Agreement), including, but not limited to, all of such Debtor's accounts, chattel paper, documents, general intangibles, goods (including, without limitation, inventory, equipment and fixtures), instruments, intellectual property, investment property, deposit accounts, money, cash or cash equivalents, supporting obligations and letter of credit rights, commercial tort claims, a pledge of

one hundred percent (100%) of the capital stock of each of its domestic subsidiaries and sixty-five percent (65%) of the capital stock of each of its foreign subsidiaries and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing, in each case, whether then owned or existing or thereafter acquired or arising. All collateral granted or pledged by the Debtors pursuant to the Prepetition Collateral Documents shall collectively be referred to herein as the "Prepetition ABL Collateral."

(3)     Prepetition Senior Notes: Pursuant to that certain Indenture dated April 4, 2013, by and among American Apparel, the guarantors party thereto, and the Prepetition Senior Notes Trustee, as trustee and collateral agent (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition Senior Notes Indenture"), American Apparel issued senior secured notes in the original aggregate principal amount of $206 million (the "Prepetition Senior Notes") plus all accrued and unpaid interest, fees, and expenses. The Prepetition Senior Notes Indenture, along with any other agreements, instruments, notes, guaranties and other documents executed in connection therewith, in each case as the same may be amended, modified and/or supplemented from time to time in accordance with the terms thereof, are collectively referred to herein as the "Prepetition Senior Notes Documents". All obligations of the Debtors arising under the Prepetition Senior Notes Indenture, including all notes, advances, debts, liabilities, principal, interest, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the holders of the Prepetition Senior Notes (the "Prepetition Senior Noteholders" and, together with the Prepetition ABL Agent, the Prepetition ABL Lenders, and the Prepetition Senior Notes Trustee, the "Prepetition Secured Parties") and the Prepetition Senior Notes Trustee by the Debtors, of any kind or nature, whether or not evidenced by any

note, agreement or other instrument, shall hereinafter be referred to as the "Prepetition Senior Notes Obligations" (together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

(4)      Pursuant to certain security documents (referred to in this Interim Order as the "Prepetition Senior Notes Collateral Documents"), each Debtor granted to the Prepetition Senior Notes Trustee, for the benefit of itself and the Prepetition Senior Noteholders, to secure the Prepetition Senior Notes Obligations, a security interest in and lien on substantially all of the Debtors' assets, including the Prepetition ABL Collateral, as described in detail in the Prepetition Senior Notes Documents (the "Prepetition Senior Notes Collateral" and, together with the Prepetition ABL Collateral, the "Prepetition Collateral").

(5)      Prepetition Senior Notes Intercreditor Agreement:     That certain Intercreditor Agreement, dated as of April 4, 2013 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, including by that certain Amendment No. 1 to Intercreditor Agreement, dated as of August 17, 2015, the "Prepetition Senior Notes Intercreditor Agreement" and, together with the Prepetition ABL Documents and the Prepetition Senior Notes Documents, the "Prepetition Credit Documents"), by and between the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, and the Prepetition Senior Notes Trustee, for the benefit of itself and the Prepetition Senior Noteholders, and acknowledged by the Borrowers and the Guarantors, sets forth, *inter alia*, the relative priority of the security interests in and liens on the Prepetition Collateral granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, and the Prepetition Senior Notes Trustee, for the benefit of itself and the Prepetition Senior Noteholders.

(6)     All Prepetition Credit Documents executed and delivered by the Debtors to the Prepetition Secured Parties are valid and enforceable by the Prepetition Secured Parties against each of the Debtors.  The Prepetition Secured Parties duly perfected their liens upon and security interests in the Prepetition Collateral by, among other things, filing financing statements, entering into deposit account control agreements and, where necessary, possessing the relevant instruments, certificates, or other property.   All of such financing statements were validly executed by authorized representatives of the Debtors.   Pursuant to the Prepetition Credit Documents, the Prepetition Secured Parties have perfected security interests in and liens on all of the Prepetition Collateral, including, without limitation, cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code), including, without limitation, all of the Debtors' cash on hand as of the Commencement Date (collectively, the "Cash Collateral").

(7)     The liens and security interests of the Prepetition Secured Parties in the Prepetition Collateral, including the Cash Collateral, as security for the Prepetition Secured Obligations, constitute valid, binding, enforceable and perfected liens and security interests and are not subject to avoidance, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the DIP Liens and the Carve-Out (as defined below) in accordance with the provisions of this Interim Order). The Debtors further admit, acknowledge and agree that (a) the Prepetition Secured Obligations constitute legal, valid and binding obligations of each of the Debtors, (b) no offsets, defenses or counterclaims to the Prepetition Obligations exist and (c) no portion of the Prepetition Obligations is subject to avoidance, disallowance, reduction, objection, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(8)    The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Secured Parties with respect to the Prepetition Secured Notes Documents and the Prepetition ABL Documents, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code.

(9)    As of the Commencement Date, the aggregate principal balance of the Prepetition Secured Obligations for which the Debtors were truly and justly indebted to the Prepetition Secured Parties, without defense, counterclaim, recoupment or offset of any kind, are comprised of not less than approximately (i) an aggregate principal balance of $60,020,202 on account of the Prepetition ABL Facility, plus all other Prepetition ABL Obligations, and (ii) an aggregate principal balance of no less than $209,858,779 on account of the Prepetition Senior Notes, plus all other Prepetition Senior Notes Obligations.

F.    The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Credit Facility and to use Cash Collateral to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, satisfy other working capital and operational needs and fund the administration and prosecution of the Cases. The Debtors' access to sufficient working capital and liquidity through the incurrence of postpetition financing under the DIP Credit Facility and the use of Cash Collateral under the terms of this Interim Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates, the orderly operation of the Debtors' businesses and, ultimately, the success of the Cases. Consequently, without access to the DIP Credit Facility and the continued use of Cash Collateral,

to the extent authorized pursuant to this Interim Order, the Debtors and their estates would suffer immediate and irreparable harm.

        G.      The Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets of their estates under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Agent and the DIP Lenders on terms more favorable than the terms of the DIP Credit Facility. The only available source of secured credit available to the Debtors is the DIP Credit Facility. The Debtors are not able to operate and manage their business solely with the use of Cash Collateral. The Debtors require both additional financing under the DIP Credit Facility and the continued use of Cash Collateral under the terms of this Interim Order in order to satisfy their postpetition liquidity needs.

        H.      The DIP Lenders have indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Interim Order and in the DIP Credit Documents. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of this Interim Order and the DIP Credit Documents represents the best financing presently available to the Debtors.

        I.      Solely on the terms and conditions set forth in this Interim Order and in the DIP Credit Documents, Prepetition Secured Parties are prepared to consent to: (i) the imposition of certain liens under section 364(d)(1) of the Bankruptcy Code in favor of the DIP

Agent, for the benefit of itself and the DIP Lenders, which liens will prime the Primed Liens (as defined hereinafter) and (ii) the Debtors' use of the Prepetition Collateral (including the Cash Collateral), provided that the Court authorizes the Debtors, pursuant to sections 361, 363 and 364(d) of the Bankruptcy Code, to grant to the Prepetition ABL Agent and the Prepetition Secured Notes Trustee, for the benefit of themselves and the Prepetition ABL Lenders and the Prepetition Secured Noteholders, respectively, as and for adequate protection and without in any way limiting the Prepetition Secured Parties' rights under section 552 of the Bankruptcy Code, but subject to the Carve-Out, (1) a security interest in and lien and mortgage upon the DIP Collateral (as defined hereinafter) in favor of the Prepetition Secured Parties, which shall have the priorities set forth in paragraph 12 hereof (the "Prepetition Secured Parties' Adequate Protection Lien") and (2) superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (collectively, the "Adequate Protection Priority Claims").

        J.     The security interests and liens granted pursuant to this Interim Order to the DIP Agent, for the benefit of itself and the DIP Lenders, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates; and/or (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to this Interim Order to the DIP Agent for the benefit of itself and the DIP Lenders; and (iii) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected. In particular, the security interests and liens of the Prepetition Secured Parties are adequately protected by the Prepetition Secured Parties' Adequate Protection Lien and the Adequate Protection Priority Claims.

K.      Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2. In particular, the authorization granted herein for the Debtors to execute the DIP Credit Documents, to continue using Cash Collateral and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates. Entry of this Interim Order is in the best interest of the Debtors, their estates and creditors. The terms of the DIP Credit Documents (including the Debtors' continued use of Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

L.      The Debtors, the DIP Agent, the Committee of Lead Lenders and the Prepetition Secured Parties have negotiated the terms and conditions of the DIP Credit Documents (including the Debtors' continued use of Cash Collateral) and this Interim Order in good faith and at arm's-length, and any credit extended and loans made to the Debtors pursuant to this Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

M.      [Intentionally omitted.]

N.      Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      *Approval of Motion.* The Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order. Any objections or responses to the relief requested in the Motion that have not been previously resolved or withdrawn, waived or settled are hereby overruled on the merits and denied with prejudice or, to the extent applicable,

deferred until the Final Hearing. The rights of all parties in interest to object to entry of a Final Order are reserved. This Interim Order shall become effective immediately upon its entry. To the extent that the terms of the DIP Credit Documents differ from the terms of this Interim Order, this Interim Order shall control.

2. _Authority to Enter Into DIP Credit Agreement, Authority Thereunder_. The Debtors are hereby authorized to enter into the DIP Credit Documents, including the DIP Credit Agreement, and such additional documents, instruments and agreements as may be reasonably required by the DIP Agent to implement the terms or effectuate the purposes of this Interim Order. The Borrower is hereby authorized to borrow money under the DIP Credit Agreement, on an interim basis, up to an aggregate principal or face amount not to exceed $10 million plus amounts necessary to effect the Prepetition ABL Refinancing, and the Guarantors are hereby authorized to guaranty such borrowings, all in accordance with the terms of this Interim Order, the DIP Credit Agreement and the other DIP Credit Documents.

3. _Use of Cash Collateral and DIP Loans_. The Debtors are hereby authorized to use the Cash Collateral and proceeds of DIP Loans (as defined below) and the DIP Facility solely (i) for the Prepetition ABL Refinancing; (ii) the DIP Fees and Expenses (as defined below); (iii) the fees and expenses of Professional Persons (as defined below); and (iv) to make disbursements in the ordinary course of the Debtors' business and pay for the costs of administering these Cases in accordance with the Budget (as defined in the DIP Credit Agreement), in each case, pursuant the terms, conditions, and procedures set forth in the DIP Credit Agreement and this Interim Order, it being understood that in no event shall the Budget be construed as a cap on the payment of the items set forth in (i), (ii), and (iii) of this paragraph. Any and all of the Debtors' cash on hand as of the Commencement Date shall be deemed used

and exhausted prior to the Debtors' use of the proceeds of the DIP Credit Facility, regardless of whether such cash on hand is commingled with such proceeds of the DIP Credit Facility or actually used.

        4.    *Payment of DIP Fees and Expenses.* The Debtors are hereby authorized to pay all reasonable fees, expenses and other amounts payable under the terms of the DIP Credit Agreement, including, without limitation, the Commitment Fee, the fees specified in the Administrative Agent's Letter Agreement and the Exit Fee (each as defined in the DIP Credit Agreement) and all reasonable out-of-pocket costs and expenses of the DIP Agent, the Committee of Lead Lenders and the SG Lenders (as defined in the DIP Credit Agreement) in accordance with the terms of the DIP Credit Agreement (including, without limitation, the prepetition and postpetition fees and disbursements of legal counsel, financial advisors and third-party appraisers and consultants advising the DIP Agent and the Committee of Lead Lenders) (collectively, the "DIP Fees and Expenses"); provided, however, DIP Fees and Expenses shall not include, among other things, costs, fees and expenses incurred by the SG Lenders or Standard General (as defined in the DIP Credit Agreement) relating to any litigation commenced against the SG Lenders or Standard General or any challenges to the SG Lenders' or Standard General's claims unless such litigation or challenges are brought by (a) the Committee of Lead Lenders or the Debtors or (b) against any SG Lender directly in its capacity as DIP Lender. None of the DIP Fees and Expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the DIP Agent, the Committee of Lead Lenders and the SG Lenders shall submit copies of their professional fee invoices to the Debtors, the U.S. Trustee and the Committee, and the Debtors, U.S. Trustee and

the Committee shall have ten (10) days from receipt thereof to object in writing to the reasonableness of such invoices; to the extent that the Debtors, U.S. Trustee or the Committee so objects to any such invoices, payment of the disputed portion of such invoices will be subject to review by the Court; provided, further, however, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. In addition, the Debtors are hereby authorized to indemnify the DIP Agent and the DIP Lenders against any liability arising in connection with the DIP Credit Documents to the extent set forth in the DIP Credit Documents. All such unpaid fees, expenses and indemnities of the DIP Agent shall constitute DIP Obligations (as defined hereinafter) and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Credit Documents. The Debtors shall pay the fees and expenses provided for in this paragraph 4 promptly after the foregoing ten (10)-day period.

5.     *Validity of DIP Credit Documents.* Upon execution and delivery of the DIP Credit Documents and entry of this Interim Order, the DIP Credit Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms thereof. No obligation, payment, transfer or grant of security under the DIP Credit Documents as approved under this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.     *DIP Loans.*  All loans made to or for the benefit of the Debtors on or after the Commencement Date under the DIP Credit Documents, including the Prepetition Letters of Credit, which shall be and hereby are deemed re-issued under the DIP Credit Documents (collectively, the "DIP Loans"), all interest thereon and all fees, costs, expenses, indemnification obligations and other liabilities owing by the Debtors to the DIP Agent and the DIP Lenders under the DIP Credit Documents and this Interim Order and any obligations arising under the Prepetition ABL Documents after the ABL Refinancing shall hereinafter be referred to as the "DIP Obligations."  The DIP Loans:  (a) shall be evidenced by the books and records of the DIP Agent or the DIP Lenders; (b) shall bear interest payable at the rates set forth in the DIP Credit Agreement; (c) shall be secured in the manner specified in paragraph 14 below and in the DIP Documents; (d) shall be payable in accordance with the terms of the DIP Credit Documents; and (e) shall otherwise be governed by the terms set forth herein and in the DIP Credit Documents.

7.     *Repayment of Prepetition ABL Credit Facility.*  Upon entry of this Interim Order, the Borrower shall use the proceeds of the DIP Credit Facility, as a condition to the closing of the DIP Credit Facility and the provision of liquidity thereunder, to pay in full all outstanding Prepetition ABL Obligations in accordance with the terms, conditions, and procedures set forth in the DIP Credit Agreement (the "Prepetition ABL Refinancing").

8.     *Continuation of Prepetition Liens and Prepetition Liens Securing DIP Obligations.*  Until (a) the Borrower and the Guarantors have paid in full all DIP Obligations and all Prepetition Secured Obligations (in each case, other than unasserted contingent indemnification obligations), (b) the DIP Lenders' commitments under the DIP Credit Facility have terminated, (c) all objections and challenges to (i) the liens and security interests of the Prepetition Secured Parties (including, without limitation, liens granted for adequate protection

purposes) and (ii) the Prepetition Secured Obligations have been waived, denied or barred, and (d) all of the Debtors' stipulations contained in paragraphs E(1), E(2), E(5), E(7), E(8) and E(9) of this Interim Order (collectively, the "Debtors' Stipulations") have become binding upon their estates and parties in interest in accordance with paragraph 27 below, all liens and security interests of the Prepetition Secured Parties (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein. Without limiting the foregoing, notwithstanding any payment of all or any portion of the Prepetition Secured Obligations, the Prepetition Liens shall continue in full force and effect and shall, and shall be deemed to, secure the full and timely payment of the DIP Obligations (separate from and in addition to the DIP Liens granted to the DIP Agent and the DIP Lenders in paragraph 14 below) until the payment in full of all of the DIP Obligations and the termination of the DIP Lenders' commitments under the DIP Credit Facility.

9. *DIP Liens and DIP Collateral.* As security for the full and timely payment of the DIP Obligations, the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders, is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, subject to (x) the Carve-Out and (y) any existing valid, perfected, enforceable and non-avoidable liens existing as of the Commencement Date that are senior to Prepetition Liens, valid, enforceable, unavoidable and fully perfected first-priority security interests in and priming liens and mortgages as set forth in the DIP Credit Documents (collectively, the "DIP Liens") and to the extent not otherwise set forth in the DIP Credit Documents upon all existing and after-acquired tangible and intangible personal and real property and assets of each of the Debtors and all proceeds thereof, other than (i) thirty-five percent (35%) of the outstanding voting capital stock of the Debtors' respective first-tier Foreign Subsidiaries (as defined in the

DIP Credit Agreement) and any assets directly or indirectly owned by a CFC (as defined in the DIP Credit Agreement) and any proceeds thereof and (ii) any leasehold interest (or any of rights or interests thereunder) the grant of a lien on which, notwithstanding the Bankruptcy Code, shall constitute or result in the abandonment, invalidation or unenforceability of any right, title or interest of the obligor under any lease governing such leasehold interest or a breach or termination pursuant to the terms of, or a default under, any such lease (collectively, the "DIP Collateral"); provided that (1) the proceeds of the leasehold interests excluded from the DIP Collateral pursuant to the immediately preceding clause (ii) shall constitute DIP Collateral (but shall be junior to any valid and perfected first-priority lien existing as of the Commencement Date on any asset that is the subject property of such lease) and (2) pending entry of the Final Order, this Interim Order does not grant, and shall not be deemed to grant, any security interests in or liens on claims and causes of action under chapter 5 of the Bankruptcy Code and similar laws, and any proceeds thereof and property received thereby, whether by judgment, settlement or otherwise (collectively, "Avoidance Actions"); provided, however, that Avoidance Actions shall not include any claims and causes of action under section 549 of the Bankruptcy Code and any proceeds thereof and property received on account thereof, whether by judgment, settlement or otherwise, and all such claims and causes, proceeds and property shall constitute DIP Collateral.

      10.    *DIP Lenders' Superpriority Claims.* In addition to the DIP Liens, subject to the Carve-Out and in accordance with sections 364(c)(1), 503 and 507 of the Bankruptcy Code, all of the DIP Obligations (including, without limitation, all DIP Loans) shall constitute allowed superpriority administrative expense claims (the "DIP Superpriority Claims") with priority over any and all administrative expenses of the Debtors, whether heretofore or hereafter

incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, 1114 or any other provisions of the Bankruptcy Code, which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, including, but not limited to, the proceeds of Avoidance Actions, and all proceeds thereof.

11.     Funds shall not be available to the Debtors or any other party under the Exit Credit Agreement (as defined in the DIP Credit Agreement) until all conditions under the Exit Term Sheet (as defined in the DIP Credit Agreement) and the Exit Credit Agreement have been satisfied, including, without limitation, the confirmation of an Approved Plan of Reorganization (as defined in the DIP Credit Agreement).

12.     _Adequate Protection for Prepetition Lenders_.  Without in any way limiting the Prepetition Secured Parties' respective rights under the Bankruptcy Code, including, without limitation, section 552 of the Bankruptcy Code, the Prepetition Secured Parties are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in their respective Cash Collateral for the sale, lease or use by the Debtors of the Prepetition Collateral, the priming of the Prepetition Liens, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  The Prepetition Secured Parties shall receive and retain all rights and entitlements that a secured creditor that did not consent to the use of its cash collateral or other property or sought relief from the automatic stay and had such request been overruled would otherwise receive and/or retain.  In addition, the Prepetition Secured Parties are hereby granted the following:

A.     Effective and perfected upon the date of entry of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge

agreements, financing statements or other agreements, the Prepetition Secured Parties' Adequate Protection Liens and the Adequate Protection Priority Claims, which shall secure the payment of an amount equal to the diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Commencement Date, including, without limitation, any such diminution resulting from: (A) the use by the Borrower of such collateral and cash and property constituting proceeds of such collateral, (B) the imposition of those liens granted to the DIP Lenders which will prime the Prepetition Secured Parties' prepetition liens, (C) the Carve-Out, (D) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code and/or (E) any other reason (the "Adequate Protection Obligations").

        B.      To give effect to the Prepetition Secured Parties' intent to recognize the priorities established in the Prepetition Senior Notes Intercreditor Agreement, the priority of the Adequate Protection Liens shall be as follows: pursuant to section 364(c) of the Bankruptcy Code, and subject only to the DIP Liens, any existing, valid, perfected, enforceable and non-avoidable liens that are senior to the DIP Liens, and the Carve-Out, (1) the Adequate Protection Liens granted to the Prepetition ABL Agent and Prepetition ABL Lenders (x) shall constitute first-priority security interests in and liens upon DIP Collateral that is also Prepetition ABL Collateral in which the Prepetition ABL Agent, for the benefit of itself and the Prepetition Lenders, has a first-priority security interest pursuant to the Prepetition Senior Notes Intercreditor Agreement (the "Prepetition ABL First Lien Collateral"); (y) shall constitute second-priority security interests in and liens upon DIP Collateral that is Prepetition Notes First Lien Collateral (as defined below); and (z) shall be *pari passu* in priority with regard to all other DIP Collateral that is neither Prepetition ABL First Lien Collateral nor Prepetition Notes First Lien Collateral, and (2) the Adequate Protection Liens granted to the Prepetition Senior Notes

Trustee and Prepetition Senior Noteholders (x) shall constitute first-priority security interests in and liens upon DIP Collateral that is also Prepetition Senior Notes Collateral that the Prepetition Senior Notes Trustee, for the benefit of itself and the Prepetition Senior Noteholders, has a first-priority security interest in pursuant to the Prepetition Senior Notes Intercreditor Agreement (the "Prepetition Notes First Lien Collateral"); (y) shall constitute second-priority security interests in and liens upon DIP Collateral that is Prepetition ABL First Lien Collateral; and (z) shall be *pari passu* in priority with regard to all other DIP Collateral that is neither Prepetition ABL First Lien Collateral nor Prepetition Notes First Lien Collateral.

C.      As additional adequate protection, and subject to the Budget, the Debtors shall pay to the Prepetition ABL Agent and the Prepetition Senior Notes Trustee (i) immediately upon entry of this Interim Order, in the form of cash payments equal to all accrued and unpaid reasonable and documented fees and out-of-pocket expenses (including, but not limited to, the fees owed to the Prepetition ABL Agent for its services as administrative agent and collateral agent and the Prepetition Senior Notes Trustee for its services as indenture trustee and collateral agent, and the fees and out-of-pocket expenses of the respective counsel to the Prepetition ABL Agent and the Prepetition Senior Notes Trustee) owing to such parties and incurred before the Commencement Date; and (ii) from time to time after the Commencement Date, in the form of cash payments equal to all reasonable and documented fees and out-of-pocket expenses (including, but not limited to, the fees owed to the Prepetition ABL Agent for its services as administrative agent and collateral agent and the Prepetition Senior Notes Trustee for its services as indenture trustee and collateral agent, and the fees and out-of-pocket expenses of the respective counsel to the Prepetition ABL Agent and the Prepetition Senior Notes Trustee) (all such payments, the "Adequate Protection Payments"). None of the fees and expenses payable

pursuant to this paragraph 12(C) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses) or United States Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with the Court with respect thereto; provided, however, that the Prepetition ABL Agent and the Prepetition Senior Notes Trustee shall submit copies of their professional fee invoices to the Debtors, the U.S. Trustee and the Committee; and the Debtors, U.S. Trustee and the Committee shall have ten (10) days from receipt thereof to object in writing to the reasonableness of such invoices; to the extent that the Debtors, U.S. Trustee or the Committee so objects to any such invoices, payment of the allegedly unreasonable portion of such invoices will be subject to review by the Court; provided, further, however, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. The Debtors shall pay the fees and expenses provided for in this paragraph 12(C) promptly after the foregoing ten (10)-day period.

D.     The consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens is limited to the DIP Credit Facility presently before the Court and shall not extend to any other postpetition financing or to any modified version of the DIP Credit Facility. Furthermore, the consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise, and, to the extent of any

dispute regarding the payment or entitlement to adequate protection, including adequate protection granted pursuant to this Interim Order, the Debtors shall retain the burden of proof.

        13.    *Automatic Effectiveness of Liens*.  Except as expressly set forth herein (including, without limitation, with respect to the Carve-Out), the liens granted pursuant to this Interim Order shall not be (a) subject to any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (b) subordinated to or made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code other than as explicitly provided herein. The DIP Liens and the Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Commencement Date without any further action by the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, guaranty agreements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents or the taking of any other actions. All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except the Carve-Out and other permitted liens and encumbrances as provided herein and in the DIP Credit Agreement. If the DIP Agent hereafter requests that the Debtors execute and deliver to the DIP Agent financing statements, guaranty agreements, security agreements, collateral assignments, mortgages or other instruments and documents considered by the DIP Agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments and documents, and the DIP Agent is hereby authorized to

file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

14. _Carve Out._

(a) Upon the DIP Agent's issuance of a Carve-Out Trigger Notice (as defined below), the DIP Collateral, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Priority Claims, and the Adequate Protection Liens shall be subject to the payment of the Carve-Out. For purposes of this Order, the "Carve-Out" shall mean, collectively: the sum of (i) all fees required to be paid to the clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and 31 U.S.C. §3717, (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $100,000, (iii) all accrued and unpaid claims for unpaid fees, costs, disbursements, charges and expenses incurred at any time before the Carve-Out Trigger Date (as defined below), or any monthly fees payable to estate professionals (but not any success or transaction fees), in each case, by persons or firms retained by the Debtors or the Committee whose retention is approved by the Court pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the "Professional Persons," and the fees, costs and expenses of Professional Persons, the "Carve-Out Expenses"), to the extent such Carve-Out Expenses are allowed by the Court at any time (i.e., before or after the Carve-Out Trigger Date) on a final basis; and (iv) all Carve-Out Expenses incurred on and after the Carve-Out Trigger Date by Professional Persons and allowed by the Court at any time, whether before or after the Carve-Out Trigger Date, whether by interim order, procedural order or otherwise; provided, that, the payment of any Carve-Out Expenses of the Professional Persons (but excluding fees and expenses of third party professionals employed by individual members of the Committee) incurred on or after the Carve-Out Trigger Date and

allowed by the Court at any time, whether before or after the Carve-Out Trigger Date, on a final

basis, shall not exceed $2,000,000 in the aggregate (the "Professional Expense Cap"); provided,

that (A) any payments actually made in respect of Carve-Out Expenses of the Professional

Persons incurred on or after the Carve-Out Trigger Date and allowed by the Court at any time,

whether before or after the Carve-Out Trigger Date, on a final basis, shall reduce the

Professional Expense Cap on a dollar-for-dollar basis and (B) for the avoidance of doubt, so long

as no Carve-Out Trigger Date has occurred, the payment of Carve-Out Expenses shall not reduce

the Professional Expense Cap. For the purposes of the foregoing, "Carve-Out Trigger Date"

means the first business day after (A) the occurrence and during the continuance of (x) an Event

of Default under this Agreement or (y) a default by any Borrower in any of its obligations under

any Chapter 11 Order, in each case, unless such Event of Default or default is cured or waived,

and (B) delivery of written notice thereof (the "Carve-Out Notice") by the DIP Agent to (1) the

U.S. Trustee, (2) the Borrower Representative (as defined in the DIP Credit Agreement) and

counsel to the Debtors, and (3) counsel for the Committee. For the avoidance of doubt, the

Carve-Out shall be senior to any claims arising under or relating to and liens securing the DIP

Facility, the Prepetition Secured Obligations, including, without limitation, any administrative or

superpriority claims and all forms of adequate protection liens or security interests. In any event,

the DIP Agent and the Prepetition ABL Agent reserve the right to review and object to any fee

statement, interim application or monthly application issued or filed by estate professionals. Any

funding or payment of the Carve-Out shall be added to, and made a part of, the DIP Obligations

and adequate protection and shall be otherwise entitled to the protections granted under this

Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

(b)     Immediately upon delivery of a Carve-Out Notice, no Cash Collateral, proceeds of the DIP Credit Facility or any other cash of the Debtors shall be applied toward any of the DIP Obligations unless and until the Debtors have transferred from their concentration account to a segregated account (the "Carve-Out Account") not subject to the control of the DIP Agent, DIP Lenders or the Prepetition Secured Parties an amount equal to the Professional Expense Cap plus an amount equal to the aggregate unpaid fees, costs and expenses described in clause (iii) of the definition of "Carve-Out" as reasonably determined by a good faith estimate of the applicable Professional Person.  The Carve-Out Account and the proceeds on deposit in the Carve-Out Account shall be available only to satisfy obligations benefitting from the Carve-Out and shall not constitute DIP Collateral, except that the DIP Lenders and Prepetition Secured Parties shall retain security interests in any residual interests in the Carve-Out Account available following satisfaction in full of all obligations benefitting from the Carve-Out, and shall receive distributions on accounts of such residual interests.

(c)     For the avoidance of doubt, the Carve-Out shall be senior to any claims arising under or relating to and liens securing the DIP Facility, the Prepetition ABL Obligations, the Prepetition Secured Notes Obligations, including, without limitation, any administrative or superpriority claims and all forms of adequate protection liens or security interests related to any of the foregoing.

15.     *Investigation of Prepetition Liens.*  The Debtors shall not assert or prosecute, and no portion of the DIP Credit Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with (a) asserting or prosecuting any claims or causes of action against the

Prepetition Secured Parties, the DIP Agent, or the DIP Lenders, or (b) challenging or raising any defenses to the Prepetition Obligations or the DIP Obligations, or the liens of the Prepetition Secured Parties, the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties. Notwithstanding the foregoing, (i) the Debtors shall be permitted to contest the occurrence and/or continuance of an Event of Default in accordance with the terms and conditions of this Interim Order and (ii) no more than $50,000 of the proceeds of the DIP Credit Facility or the DIP Collateral or Cash Collateral may be used by the Committee to investigate the prepetition liens and claims of the Prepetition Secured Parties.

16.    *Cash Management System*.  The cash management system described in the Debtors' motion seeking authorization to use such system (among other relief) or in the DIP Credit Agreement (the "Cash Management System") and all accounts established in connection therewith shall be used for the purposes and on the terms and conditions set forth in the DIP Credit Agreement and the other DIP Credit Documents.  The Debtors and the DIP Agent are further authorized to enter into any additional agreements providing for the establishment of lock boxes, blocked accounts or similar arrangements in favor of the DIP Agent for purposes of facilitating cash collections from the Debtors in accordance with the terms of the DIP Credit Agreement, and to give directions and instructions to the depository banks (including, without limitation, Capital One, National Association and its affiliates) at which the Debtors' bank accounts are maintained (or amend control agreements with such depository banks) in order to direct the Debtors' cash collections to be transferred to the DIP Funding Account pursuant to (and as defined in) the DIP Credit Agreement.

17.    *Shared Control Between Prepetition Agent and DIP Agent; Access; Insurance*.  The Prepetition ABL Agent shall immediately share dominion and control with the

DIP Agent with respect to each depository account of the Debtors or other third party that was subject to a deposit account control agreement with the Prepetition ABL Agent as of the Commencement Date, and each of such deposit account control agreements shall hereafter be enforceable by the DIP Agent against, and binding upon, each depository institution party thereto until the DIP Obligations have been paid in full in cash and the DIP Credit Agreement shall have been terminated, after which such deposit account control agreements shall again be solely enforceable by the Prepetition ABL Agent. Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, for the ratable benefit of the DIP Lenders, contained in this Interim Order or the DIP Credit Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Credit Agreement and this Interim Order, upon reasonable prior written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Credit Documents, the DIP Agent may, subject to any separate agreement by and between such landlord and the DIP Agent and applicable non-bankruptcy law (each, a "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy (in accordance with the terms of the DIP Credit Agreement and this Interim Order) with respect to the DIP Collateral located thereon and, subject to such Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlord(s) thereunder; provided that, subject to such Separate Agreement, the DIP Agent shall only pay rent of the Debtors that first accrues after the DIP Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph 17. Upon entry of this Interim Order, the Prepetition

ABL Agent and the DIP Agent shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

18. _Section 506(c) and 552(b) Waivers._ The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties will request a waiver of the provisions of section 506(c) of the Bankruptcy Code and the "equities of the case" exception in section 552(b) of the Bankruptcy Code in connection with the DIP Facility at the Final Hearing. Upon the entry of a Final Order, the Debtors (on behalf of themselves and their estates) shall irrevocably waive, and shall be prohibited from asserting, (i) any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Agent, the DIP Lenders, the Prepetition Secured Parties upon, the DIP Collateral and the Prepetition Collateral, and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code in connection with the DIP Facility. Subject to the entry of a Final Order, the DIP Agent or the DIP Lenders shall in no event be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral unless consented to by the DIP Agent.

19. _Restrictions on Granting Post-Petition Liens._ Except for the Carve-Out, liens and claims otherwise permitted pursuant to section 7.03(a) of the DIP Credit Agreement or as expressly set forth in this Interim Order, it shall constitute an Event of Default if any of the Debtors incurs or requests authority to incur a claim or grants a lien (or a claim or lien is allowed) having a priority superior to or _pari passu_ with those granted pursuant to this Interim Order to the DIP Agent and the DIP Lenders, or the Prepetition Secured Parties, respectively, at any time during which any portion of the DIP Credit Facility (or any refinancing thereof), the

DIP Obligations or the adequate protection obligations owing to the Prepetition Secured Parties remains outstanding; provided, however, that the Debtors shall be entitled to incur such liens or request such authority in connection with obtaining postpetition financing, loans or financial accommodations (or a request therefor) that will indefeasibly repay in full all DIP Obligations; provided, further, however, that in connection with the seeking or obtaining of such postpetition financing, loans, or financial accommodations, the Debtors may not rely on the consent of the Prepetition Secured Parties to the relief granted in this Interim Order and any and all such consent shall be deemed to have automatically terminated.

20. *Binding Nature of Order; Order Controls.* The provisions of this Interim Order shall be binding upon the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of any Debtor's estate or with respect to its property). In the event of any inconsistency between the provisions of this Interim Order and any of the DIP Documents, the provisions of this Interim Order shall govern.

21. *Survival of Order.* The provisions of this Interim Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Cases; (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; or (iii) dismissing any of the Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Interim Order shall maintain their priority as provided by this Interim Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the terms of the DIP Credit Agreement. The DIP Obligations shall not be discharged by the entry of any order confirming any plan of reorganization in any of the Cases, and the Debtors

shall, and shall be deemed to, waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

22. _Protection under Section 364(e) of the Bankruptcy Code._ If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or adequate protection obligations owing to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties incurred prior to the actual receipt by the DIP Agent or the Prepetition Agent, as applicable, of written notice of the effective date of such reversal, modification, vacatur or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Credit Documents with respect to any DIP Obligations or adequate protection rights of the Prepetition Secured Parties. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral or the incurrence of DIP Obligations or adequate protection rights of the Prepetition Secured Parties prior to the actual receipt by the DIP Agent, the Prepetition ABL Agent, and the Prepetition Senior Notes Trustee, as applicable, of written notice of the effective date of such reversal, modification, vacatur or stay, shall be governed in all respects by the provisions of this Interim Order, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Credit Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and adequate protection obligations owing to the Prepetition Lenders.

23. _Events of Default._ Except as otherwise provided in this Interim Order or to the extent the DIP Agent may otherwise agree in writing, any occurrence of an "Event of Default" pursuant to the DIP Credit Agreement shall constitute an event of default hereunder,

unless the DIP Agent has waived such default in accordance with the DIP Credit Documents (each, an "Event of Default"); *provided* that it shall not be an Event of Default in the event any cash proceeds generated by operations and activities of the AA UK Subsidiaries (as defined in the DIP Credit Agreement) (including cash proceeds from the closure and/or liquidation of stores (and the inventory contained therein) of the AA UK Subsidiaries) are applied to repay the SG Debt (as defined in the DIP Credit Agreement), so long as such cash proceeds are applied in accordance with the Budget.

24.     *Modification of Stay.*  The automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, upon the occurrence and during the continuation of any Event of Default and, in each case, after the provision by the DIP Agent to the Debtors of five (5) business days' prior written notice of such Event of Default (such five (5)-business day period, the "Remedies Notice Period"), which written notice shall be served by the DIP Agent via electronic mail or facsimile on the Debtors, counsel to the Debtors, counsel to the Committee of Lead Lenders, counsel to the Prepetition ABL Agent, Counsel to the Prepetition Senior Notes Trustee, counsel to the Committee (or, in the event no Committee has been appointed, to the Top 30 Creditors) and the U.S. Trustee and filed with the Court by counsel to the DIP Agent, all rights and remedies provided for in the DIP Credit Documents, and to take any or all of the following actions without further order of or application to this Court following the conclusion of the Remedies Notice Period and in the absence of a determination by the Court that an Event of Default has not occurred and/or is not continuing:  (a) immediately terminate the Debtors' use of Cash Collateral and cease making any DIP Loans to the Debtors; (b) immediately declare all DIP Obligations to be immediately due and payable; (c) immediately terminate the commitment to

enter into the Exit Credit Agreement or provide any exit financing; (d) immediately set off any and all amounts in accounts maintained by the Debtors with the DIP Agent or any of the DIP Lenders against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of any of the DIP Lenders for application towards the DIP Obligations; and (e) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Credit Documents or applicable law to effect the repayment of the DIP Obligations. The automatic stay under section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided above unless and until the Court has determined that an Event of Default has not occurred and/or is not continuing. For the avoidance of doubt, neither the DIP Agent nor any of the DIP Lenders shall exercise any such rights and remedies on account of an Event of Default until after expiration of the Remedies Notice Period. Unless ordered by the Court, any party in interest's sole recourse with respect to opposing such modification of the automatic stay under section 362(a) of the Bankruptcy Code shall be to contest the occurrence and/or continuance of an Event of Default. During the Remedies Notice Period, the Debtors shall be entitled to (x) use the proceeds of the DIP Facility or the Cash Collateral in accordance with the Budget and fund the Carve-Out (in accordance with the procedures set forth herein), (y) contest the occurrence and/or continuance of the an Event of Default and (z) to seek and obtain an emergency hearing before the Court, with proper notice to the DIP Agent, solely for the purpose of contesting whether an Event of Default has occurred and/or is continuing. The rights and remedies of the DIP Agent and the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and the DIP Lenders may have under the DIP Credit Documents or otherwise. The Borrower shall cooperate fully with the DIP Agent and

the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.

25. *Limitations on Borrowings*. It shall constitute an Event of Default if any of the Debtors obtain authorization from the Court for the Debtors or their estates to borrow money (other than in accordance with the DIP Credit Agreement) from any person other than the DIP Lenders; provided, however, that the Debtors may request and obtain such authorization in connection with postpetition financing, loans or financial accommodations that will indefeasibly repay in full all DIP Obligations; provided, further, however, that in connection with the seeking or obtaining of such postpetition financing, loans, or financial accommodations, the Debtors may not rely on the consent of the Prepetition Secured Parties to the relief granted in this Interim Order and any and all such consent shall be deemed to have automatically terminated.

26. *Modifications of DIP Credit Agreement and Budgets*. The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP Agent, with the consent of the Required Lenders, providing for any non-material modifications to the DIP Credit Agreement or of any other modifications to the DIP Credit Agreement necessary to conform the DIP Credit Agreement to this Interim Order; provided, however, that the Debtors shall provide notice of any material modification or amendment to the DIP Credit Agreement that is adverse to the Debtors' estates to counsel to the Committee, counsel to the Prepetition ABL Agent, Counsel to the Prepetition Senior Notes Trustee, counsel to the Committee of Lead Lenders, the U.S. Trustee and the Court, each of whom shall have five (5) days from the date of such notice within which to object in writing to such modification or amendment. If the Committee or the U.S. Trustee timely objects to any such material modification or amendment to the DIP Credit Agreement, such modification or amendment shall

only be permitted pursuant to an order of this Court. Any material modification that becomes effective in accordance with this paragraph 26 shall be filed with the Court.

27. _Stipulations Regarding Prepetition Obligations and Prepetition Liens Binding on Parties in Interest_. The Debtors' Stipulations shall be binding on the Debtors' estates and all parties in interest, including, without limitation, the Committee, <u>unless</u> (a) the Committee, or another party in interest (other than any of the Debtors) with standing and requisite authority, has timely commenced a contested matter or adversary proceeding (subject to the limitations set forth in paragraph 15 hereof) (a "<u>Challenge</u>") challenging the amount, validity or enforceability of the Prepetition Obligations, or the perfection or priority of the Prepetition Liens, or otherwise asserting any objections, Claims or causes of action on behalf of the Debtors' estates against the Prepetition Agent or the Prepetition Lenders relating to the Prepetition Obligations or the Prepetition Liens no later than the earlier of the date that is (X) seventy-five (75) days after the Commencement Date or (Y) sixty (60) days after the appointment of the Committee, and (b) to the extent the Court rules in favor of the plaintiff in any such timely and properly filed Challenge. If no such Challenge is timely commenced as of such date then, without further order of the Court, (x) the claims, liens and security interests of the Prepetition Secured Parties shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Cases and any subsequent chapter 7 cases and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount or otherwise, and (y) without further order of the Court, the Debtors and their estates shall be deemed to have released any and all claims or causes of action against Prepetition Secured Parties with respect to the Prepetition Credit Documents or any related transactions. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the Debtors' Stipulations shall be binding on the Debtors' estates, the

Committee and all parties in interest. If a Challenge is timely commenced, the Debtors' Stipulations shall be binding on the Debtors' estates and all parties in interest except to the extent such stipulations are specifically challenged in such Challenge as and when originally filed (ignoring any relation back principles). To the extent a Challenge is withdrawn, denied or overruled, the Debtors' Stipulations specifically challenged in such Challenge also shall be binding on the Debtors' estates and all parties in interest. For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order

28. _Termination of Commitments and Right to Use Cash Collateral_. All commitments of the DIP Lenders and any consent or right of the Debtors to use Cash Collateral shall terminate and all amounts owing under the DIP Credit Facility shall be due and payable, on the earliest to occur of the following events (collectively, the "Cash Collateral Termination Events"): (a) in the event the Final Order has not been entered by the Court within forty-five (45) days after the entry of this Interim Order, (b) in the event the Court declines to enter the Final Order, (c) the effective date of a confirmed plan, (d) subject to the other terms and conditions of this Interim Order, the Borrower's receipt of written notice (which notice shall be delivered to the Debtors, any Committee and the U.S. Trustee and may be delivered by facsimile or other electronic means of communication and in accordance with the DIP Credit Agreement) of the

occurrence of an Event of Default (such notice, a "<u>Carve-Out Trigger Notice</u>"), (e) the payment in full in cash of the DIP Obligations and (f) as otherwise provided in the DIP Credit Agreement; <u>provided</u> that the Cash Collateral Termination Events set forth in the immediately preceding clauses (b), (d) and (f) shall be subject to the Remedies Notice Period.

29. *Master Proof of Claim.* Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases to the contrary, none of the Prepetition Secured Parties will be required to file proofs of claim in any of the Cases or any successor cases for any claims arising under the Debtors' Stipulations, the Prepetition Credit Documents, and such stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Parties with regard to all claims arising under the Prepetition Credit Documents. Notwithstanding the foregoing, the Prepetition ABL Agent, for the benefit of itself and the Prepetition Lenders, and the Prepetition Senior Notes Trustee, for the benefit of itself and the Prepetition Senior Noteholders, are authorized and entitled, in their sole discretion, but are not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or proofs of claim in each of the Cases for any claim described herein.

30. *Final Hearing.* The Final Hearing is scheduled for October __, 2015, at __:00 _.m. (prevailing Eastern Time) before this Court. Any objections by creditors or other parties in interest to any provisions of this Interim Order must be timely filed and served in accordance with this paragraph 30. The Debtors shall promptly serve notice of entry of this Interim Order and the Final Hearing on the appropriate parties in interest in accordance with the Federal Rules of Bankruptcy Procedures and the Local Rules. Without limiting the foregoing, the Debtors shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile,

electronic mail or overnight mail upon the Notice Parties. The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of a Final Order shall be filed with the United States Bankruptcy Court for the District of Delaware by no later than 5:00 p.m. (prevailing Eastern Time) on October 26, 2015 (the "Objection Deadline"). The continued availability of the DIP Credit Facility shall be subject to the entry in the Cases, not later than the earlier of thirty (30) days after the entry of this Interim Order of a Final Order, following proper notice and hearing thereon, which is in all respects reasonably satisfactory to the DIP Agent, the DIP Lenders, and the Prepetition Senior Notes Trustee.

Dated: October 6, 2015.

UNITED STATES BANKRUPTCY JUDGE