# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| AMERICAN APPAREL, INC., et al.,[1] | : | Case No. 15-12055 (___) |
|  | : |  |
| Debtors. | : | (Joint Administration Requested) |
|  | : |  |

## MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CERTAIN UNSECURED CRITICAL VENDORS

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") move the Court pursuant to sections 105(a), 363(b), 1107(a) and 1108 of title 11 of

the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 9013-1(m), for the

entry of interim and final orders (in substantially the forms attached hereto as Exhibit B and

Exhibit C, respectively), authorizing but not directing the Debtors (i) to pay up to $4 million on

an interim basis and $5 million on a final basis towards the prepetition claims of certain parties

that supply goods or services critical to the continued operation of the Debtors' businesses

pursuant to the DIP Order and the DIP Documents (each as defined below); and (ii) to authorize

financial institutions to honor all related checks and electronic payment requests. In support of

this motion, the Debtors respectfully state as follows:

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Apparel, Inc. (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The address of each of the Debtors is 747 Warehouse Street, Los Angeles, California 90021.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. sections 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. section 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409.

## BACKGROUND

### A.     General Background

2.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committee of unsecured creditors has been appointed in these cases.

3.     The Debtors and their non-Debtor affiliates operate a vertically integrated manufacturing, distribution, and retail business focused on branded fashion-basic apparel, employing approximately 8,500 employees across six manufacturing facilities and approximately 230 retail stores in the United States and 17 other countries worldwide.  Additional information regarding the Debtors and these cases, including the Debtors' businesses, corporate structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of Mark Weinsten in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

### B.     Critical Vendors

4.     The Debtors operate one of the largest garment manufacturing operations in the United States.  They rely on numerous suppliers, service providers, and vendors for the delivery of goods and/or services in support of the Debtors' operations.  Their operations require

domestic capacity of certain products and services that would be difficult, if not impossible, to replace without significant disruption to the company's ability to manufacture.

5. The Debtors have reviewed their outstanding accounts payable and consulted with appropriate members of their management team to identify those vendors that are essential to the Debtors' ongoing operations (the "Critical Vendors"). In evaluating their vendors, the Debtors considered the following criteria, among others, in indentifying the Critical Vendors: (i) the nature of the goods or services being supplied and their importance to the Debtors' operations; (ii) whether the vendor is a sole or limited source or high volume supplier of materials, parts or services; (iii) even if not "sole source," whether the Debtors could find an alternative vendor within a reasonable timeframe and without undue business disruption or expense; (iv) whether the vendor is in the midst of producing a large volume order that is at risk of loss upon nonpayment of amounts owed to the vendor; (v) the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim. Through this analysis, the Debtors have identified the following categories of Critical Vendors:

> **Component and Raw Materials Suppliers**: These vendors supply unique and high quality products without which the Debtors cannot produce their in-house textiles or finished apparel to existing specifications. There is significant lead time required for these vendors to match and supply the required colors, finishes and trim for the Debtors' various product lines. These vendors have unmatched capacity to produce their products, and keep inventory in stock to immediately supply the Debtors' needs. Replacing these key vendors could delay operations for a period anywhere from three to four weeks, up to three to six months due to lead times for overseas goods or procuring replacement capacity domestically.

> **Yarn and Fabric Suppliers**: These vendors supply various types of high quality yarn and specialty fabrics that are essential to the Debtors' supply chain and manufacturing processes. For example, the Debtors' high quality clothing designs require multiple sizes of certain yarns in their fabrics that are sourced from just a handful of vendors to ensure that the same batch of fibers are used during the manufacturing process, which avoids discoloration issues in the clothing and

maintains consistency. Likewise, the Debtors have for years relied on a few trusted vendors to supply certain specialty fabrics that consumers have come to expect from the brand. To replace these vendors (if even possible) would shut down the Debtors' ability to manufacture certain products for 30 to 90 days, depending on the product or products, some of which are the Debtors' highest selling and most popular retail and wholesale products. The Debtors are currently in the midst of producing for their 2015 holiday and 2016 spring seasons. Any significant disruptions now would negatively impact sales and operating profitability for a period well into 2016.

**Contract Knitters**: These vendors provide vital external contract knitting services for particular types of specialized fabrics and product lines. The Debtors have developed long standing relationships with these vendors, each of whom produce multiple unique fabric styles for the Debtors at a capacity that could not be easily replaced by another vendor. Company management estimates it could take anywhere from 30 to 90 days to find a replacement vendor capable of providing knitting service at the capacity level needed to maintain current operations.

**Accessory and Beauty Product Suppliers:** These vendors have been trained to use the Debtors' proprietary formulas or specifications to produce multiple product lines for some of the Debtors largest selling ancillary products such as cosmetics, lipsticks and lip glosses and related items. Because these products are manufactured using the Company's proprietary formulas and specifications, transitioning to another supplier could be costly and disruptive.

**Repair/Parts Suppliers**: The Debtors' robust in-house sewing operations require a large capacity repair and parts supplier that keeps specific parts in inventory on a daily basis to service the Debtors' numerous machines. The Debtors have longstanding business relationships with the only sewing machine vendors of comparable size in the United States. While most replacement parts and supplies are produced overseas, these vendors maintain critical parts and supplies in inventory, allowing the Debtors to source them on a just-in-time and as needed basis.

**Specialty Services Providers**: The Debtors rely on a select group of vendors that supply essential contracted services for the Debtors' various product lines, including specialized fabric dyeing and finishing services. These vendors have unmatched manufacturing capacity and over the years have developed specialized and in-depth knowledge of the Debtors' unique design and manufacturing needs. Replacing any of these vendors would be challenging both from an available domestic capacity standpoint and due to possible changes in product colors and finishes, which would cause costly delays in operations and matching issues with the Company's already produced inventory.

**Specialty Finished Goods Providers**:  These vendors provide high quality, fully-fashioned and specialized goods at a capacity that cannot be matched by other domestic vendors.  Moreover, at least one of these vendors has a multi-million dollar product order currently in production and non-payment could risk the loss of those items.

6.     To avoid catastrophic disruptions in the Debtors' ability to produce high-quality products in a timely fashion, it is of the utmost importance that the Debtors' supply chain remains intact.  The Debtors are very concerned, however, that certain Critical Vendors may refuse to deliver goods and services without payment of at least some portion of their prepetition claims, or that the failure to pay may otherwise negatively impact the Debtors' existing relationships with the Critical Vendors.  The strained relationships that would likely result from the failure to pay Critical Vendors could risk the loss of products currently in production with those vendors or the absence of continued critical supply or services.  Any disruption involving products or services supplied by the Critical Vendors could result in production stoppages for the Debtors and delays in shipments, which could result in irreparable harm to the Debtors' relationships with customers.

7.     Moreover, replacing the Critical Vendors is not a viable option.  In some cases, a Critical Vendor is the only supplier of products or services in the world.  In other cases, alternative vendors could not supply the required products or services in sufficient quantity, quality, or reliability, or would not be able to supply the products or services on a cost-efficient and timely basis in the appropriate geographic area.  For example, all of the Debtors' current Critical Vendors are based in the United States and it would cause considerable disruption and delay to the Debtors' supply chain and operations if the Debtors were to switch to foreign vendors.  Even if alternative vendors could be identified in a timely fashion, all of the Critical Vendors who supply products and services to the Debtors have done so for years and possess

-5-

specific experiential knowledge about the Debtors' designs, processes, facilities and customer demands. Accordingly, it would be difficult, unduly burdensome and prohibitively expensive for the Debtors to replace the Critical Vendors.

8. The Debtors are mindful of their fiduciary obligations to preserve and maximize the value of their estates. Accordingly, the preservation and maximization of the going concern value of the Debtors' businesses, including the preservation of key business relationships, are among management's primary goals as the Debtors transition into chapter 11. Providing seamless service and high quality products to customers is paramount to meeting those goals. For these reasons, the Debtors seek to minimize the adverse business effects—as well as the cash flow impact—of their chapter 11 filing to the fullest extent possible by obtaining authority to pay at least some portion of the prepetition claims of certain Critical Vendors.

## **RELIEF REQUESTED**

9. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as <u>Exhibit B</u> and <u>Exhibit C</u>, respectively, authorizing the Debtors to pay, in the ordinary course of business and in the Debtors' discretion, subject to any order approving the Debtors' postpetition financing facility (the "DIP Order") and the documentation in respect of the postpetition financing facility (the "DIP Documents"), and subject to the Critical Vendors' agreement to trade terms, the prepetition, fixed, liquidated, and undisputed claims of certain Critical Vendors (the "<u>Critical Vendor Claims</u>") on an interim basis in an aggregate amount not to exceed $4 million (the "<u>Interim Cap Amount</u>"), and on a final basis in an aggregate amount not to exceed $5 million (the "<u>Final Cap Amount</u>").

10. In addition, the Debtors request that all applicable banks and other financial institutions (collectively, the "<u>Banks</u>") be authorized, when requested by the Debtors, to

receive, process, honor and pay any and all postpetition checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, Critical Vendor Claims, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Critical Vendors. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

**Proposed Conditions to Payment of Critical Vendor Claims**

11.     The Debtors seek authority to pay certain Critical Vendors in an aggregate amount not to exceed $5 million, subject to the DIP Order and the DIP Documents. In conjunction therewith, the Debtors propose to implement procedures commonly applied in similar cases (the "Critical Vendor Procedures"). To that end, as a condition of payment of any portion of a Critical Vendor Claim (a "Critical Vendor Payment"), the Debtors may require that a Critical Vendor execute an agreement (a "Trade Agreement"), in substantially the form attached hereto as Exhibit A, whereby the Critical Vendor agrees to: (i) the continuance of the parties' existing business relationship; (ii) other business terms on a postpetition basis consistent with past practices, including the pricing of goods and services and the provision of equivalent levels of service, on terms at least as favorable as those extended in the normal course prior to the Petition Date, or on such other terms that are acceptable to the Debtors; and (iii) the release to the Debtors of goods or other assets owned by the Debtors in the Critical Vendor's possession, if any (collectively, the "Trade Terms"). The Trade Terms would be applicable throughout the pendency of the Debtors' chapter 11 cases.

12.     If a Critical Vendor that has executed a Trade Agreement accepts a Critical Vendor Payment and fails to provide the Debtors with the requisite Trade Terms

specified therein, then (i) any Critical Vendor Payment received by the Critical Vendor may be deemed by the Debtors as an unauthorized postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may, at the Debtors' option, (a) seek to recover from the Critical Vendor in cash or (b) apply against any outstanding administrative claim held by such Critical Vendor; and (ii) upon recovery of any Critical Vendor Payment, the corresponding prepetition claim of the Critical Vendor will be reinstated in the amount recovered by the Debtors.

13.     To ensure that the Critical Vendors comply with the foregoing requirements, the Debtors propose that a letter substantially in the form attached hereto as Exhibit A be sent to the Critical Vendors along with a copy of the order granting this motion.

## BASIS FOR RELIEF

14.     It is in the best interests of the Debtors' estates that the Critical Vendor Claims be paid, and the Court has the authority under the Bankruptcy Code to permit the Debtors to satisfy such obligations. The Court's authority to approve the satisfaction of prepetition obligations derives from both the Bankruptcy Code and the common law "doctrine of necessity."

15.     At least four Bankruptcy Code provisions support the satisfaction of the Critical Vendor Claims: (a) section 363(b)(1) provides that after notice and a hearing, and based on a "sound business purpose," a debtor may "use, sell, or lease, other than in the ordinary course of business, property of the estate"; (b) section 1107(a) provides a debtor in possession with all rights, powers, and duties of a trustee, which includes maximizing the value of the estate; and (c) section 105(a) permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *In re Filene's Basement, LLC*, 2014 Bankr. LEXIS 2000,

-8-

at *39-40 (Bankr. D. Del. Apr. 29, 2014) ("Transactions under § 363 must be based upon the sound business judgment of the debtor or trustee."); *In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, at *7-8 (D. Del. May 20, 2002) (a debtor satisfies the requirements of section 363(b)(1) through the "sound exercise of business judgment"); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992).

16. Payment of Critical Vendor Claims is also supported by the "doctrine of necessity." "The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor." *In re Motor Coach Indus. Int'l*, 2009 U.S. Dist. LEXIS 10024, at *7 n.5 (D. Del. Feb. 10, 2009).

17. Courts in this and other districts have consistently and appropriately been reluctant to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985). To that end, once a debtor articulates a sound basis for its business decisions, courts generally will not entertain objections to a debtor's conduct. *In re Dura Auto. Sys.*, 2007 Bankr. LEXIS 2764, at *259-60 (Bankr. D. Del. Aug. 15, 2007). In other words, if a debtor's actions satisfy the business judgment rule, those actions will generally be approved. *Id.*; *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

18. Citing a combination of the above-identified Bankruptcy Code provisions and the doctrine of necessity, courts have repeatedly recognized "the existence of the judicial power to authorize a debtor . . . to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr.

S.D.N.Y. 1989); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted); *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a [prepetition] claim . . . is essential to the continued operation of the [debtor] during reorganization, payment may be authorized . . ."); *In re Friedman's Inc.*, 2011 Bankr. LEXIS 4500, at *7-8 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow [the payment of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business.").

19.     The relief requested herein is necessary for the Debtors to continue their operations during the course of these chapter 11 cases and to emerge as a successfully reorganized organization. As described above, the Debtors have narrowly tailored the definition of "Critical Vendors" to encompass only those vendors that are a sole or limited source of a particular good or service without which the Debtors' business would be severely impacted, or those suppliers or service providers who are critical because the time and expense that would be involved in transitioning to a new supplier would be prohibitive and would significantly disrupt the Debtors' operations. The Debtors operate in a highly competitive business sector with significant domestic and foreign competition. The Debtors cannot afford any material disruptions of their business operations or present anything less than a "business as usual" appearance to their customers. In the case of all Critical Vendors, if the Debtors lose or replace

their supplier or service provider relationships, production could be threatened, revenue could suffer and operations may be placed in jeopardy. Under these circumstances, the Debtors believe that it is essential that they be authorized to pay such Critical Vendors to the extent necessary to ensure that their essential services continue without any interruption on a postpetition basis.

20.     Furthermore, if the Debtors are not granted the relief requested herein, the Debtors' stakeholders may question the Debtors' ability to maintain "business as usual" operations and relationships with their stakeholders during the duration of these chapter 11 cases. The Debtors' continued success depends on maintaining the confidence of their key stakeholder groups. Any loss of confidence among these stakeholders could jeopardize important and valuable employee, customer and vendor relationships and harm the Debtors' chapter 11 estates. On the other hand, requiring Critical Vendors to agree to the Trade Terms will stabilize the Debtors' liquidity and give them the ability to begin implementing their turnaround plan during the course of these cases. Under these circumstances, approval of the requested relief is appropriate and is necessary to avoid irreparable harm to the Debtors' estates.

21.     Relief similar to the relief requested herein has been granted in this District in numerous other chapter 11 cases. *See, e.g., In re Quiksilver, Inc., et al.,* Case No. 15-11880 (BLS) (Bankr. D. Del. Sept. 10, 2015*); In re Colt Holding Company, LLC, et al.,* Case No. 15-11296 (LSS) (Bankr. D. Del. Aug. 19, 2015); *In re Signal International, Inc., et al.,* Case No. 15-11498 (MFW) (Bankr. D. Del. Aug. 11, 2015); *In re Molycorp, Inc., et al.,* Case No. 15-11357 (CSS) (Bankr. D. Del. June 26, 2015); *In re OnCure Holdings, Inc., et al.,* No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013); *In re LCI Holding Company, Inc., et al.,* No. 12-13319 (KG) (Bankr. D. Del. Dec. 13, 2012); *In re AFA Investment Inc., et al.,* Case No. 12-11127

(MFW) (Bankr. D. Del. Apr. 3, 2012); *In re Harry & David Holdings, Inc., et al.,* No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011).

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

22.     Pursuant to Rules 6003(b) and 6004(h) of the Bankruptcy Rules, the Debtors seek (i) immediate entry of an order granting the relief sought herein and (ii) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may now authorize the Debtors to pay all or part of a claim that arose before the Petition Date at this time. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

23.     As set forth above and in the First Day Declaration, the honoring and payment of the Critical Vendor Claims is necessary to prevent the immediate and irreparable damage to the Debtors' production, manufacturing and distribution operations, going-concern value and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify: (i) the immediate entry of an order granting the relief sought herein; and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

24.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights

to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim against the Debtors would constitute a Critical Vendor Claim or that any vendor is a Critical Vendor; or (v) otherwise affect the Debtors' rights under the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion.

## NOTICE

25.    Notice of this motion shall be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates; (c) counsel to Standard General L.P. and its affiliates; (d) counsel to U.S. Bank, N.A., in its capacity as the trustee under the indenture governing the Debtors' secured notes; (e) Milbank, Tweed, Hadley & McCloy LLP, as counsel to an ad hoc group of noteholders; (f) counsel to Wilmington Trust, National Association, as agent to the lenders under the Debtor-in-Possession Agreement and as administrative agent for the Debtors' ABL Facility; and (g) the Internal Revenue Service and the Securities and Exchange Commission. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

26.    No previous request for the relief sought herein has been made to this Court or any other court.

-13-

WHEREFORE, the Debtors respectfully request that the Court enter orders substantially in the form attached hereto.

Respectfully submitted,

Dated: October 5, 2015

PACHULSKI STANG ZIEHL & JONES LLP

_Laura Davis Jones_

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:     ljones@pszjlaw.com
           joneill@pszjlaw.com
           jmulvihill@pszjlaw.com

and

JONES DAY
Richard L. Wynne (CA Bar No. 149504)
Erin N. Brady (CA Bar No. 215038)
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:     (213) 489-3939
Facsimile:     (213) 243-2539
Email:         rlwynne@jonesday.com
               enbrady@jonesday.com

and

Scott J. Greenberg (NY Bar No. SG-2881)
222 East 41st Street
New York, NY 10017
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306
Email:         sgreenberg@jonesday.com

Proposed Co-Counsel for the Debtors and Debtors in Possession

-14-

# EXHIBIT A

## (PROPOSED TRADE AGREEMENT)

TO:     **[Critical Vendor/Service Provider]**
        **[Name]**
        **[Address]**

Dear Valued Supplier/Service Provider:

As you are aware, American Apparel, Inc. and its subsidiaries (collectively, the "Debtors")[1] filed voluntary petitions (the "Chapter 11 Cases") for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") on October 5, 2015 (the "Petition Date"). On the Petition Date, in recognition of the importance of their relationship with vendors and suppliers and their desire that the Chapter 11 Cases have as little effect on such parties as possible, the Debtors requested the Bankruptcy Court's approval to pay the prepetition claims of certain critical vendors and suppliers. On [     ], 2015, the Bankruptcy Court entered an interim order (the "Order") authorizing the Debtors, under certain conditions, to pay the prepetition claims, in accordance with the terms of the Order, of certain trade creditors that agree to the terms set forth below and agree to be bound by the terms of the Order. A copy of the Order is enclosed for your reference. The Debtors have asked the Bankruptcy Court to schedule a final hearing and thereafter grant the relief provided in the Order on a final basis.

Under the Order, in order to receive payment of its prepetition claim, the Debtors may request that you continue to supply goods and/or services to the Debtors based on "Trade Terms." In the Order, Trade Terms are defined as (i) the continuance of the parties' existing business relationship; (ii) other business terms on a postpetition basis consistent with past practices, including the pricing of goods and services and the provision of equivalent levels of service, on terms at least as favorable as those extended in the normal course prior to the Petition Date, or on such other terms that are acceptable to the Debtors; and (iii) the release to the Debtors of goods or other assets owned by the Debtors in your possession, if any.

In addition, under the Order, in order to receive payment of its prepetition claim, you must agree to continue to supply goods and/or services to the Debtors' non-Debtor affiliates based on "Existing Trade Terms." Existing Trade Terms are defined as those trade terms in place on the Petition Date between you and the applicable non-Debtor affiliate(s).

For purposes of administering this trade program (the "Trade Program"), as authorized by the Bankruptcy Court and in accordance with the terms of the Order, the Debtors and **[Name of Trade Vendor]** agree as follows (the "Agreement"):

---

[1]     The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Apparel, Inc. (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The address of each of the Debtors is 747 Warehouse Street, Los Angeles, California 90021

(a)  Based on the Debtors' books and records, the estimated balance of the prepetition trade claim (net of any setoffs, credits or discounts) (the "Trade Claim") of **[Name of Trade Vendor]** is $_____.

(b)  The Debtors shall pay $_____ towards the Trade Claim (the "Payment").

(c)  **[Name of Trade Vendor]** agrees to supply goods/services to the Debtors in accordance with the Trade Terms, and the Debtors agree to pay **[Name of Trade Vendor]** in accordance with such Trade Terms.

(d)  The Trade Terms that **[Name of Trade Vendor]** will extend to the Debtors for shipment of postpetition goods/services is net 45 days.

(e)  [[**Name of Trade Vendor]** agrees to supply goods/services to the Debtors' non-Debtor affiliates in accordance with the Existing Trade terms.]

(f)  In consideration for the Payment, you agree not to file or otherwise assert against any or all of the Debtors, their estates or any other person or entity or any of their respective assets or property (real or personal) any lien (a "Lien") or, except as otherwise agreed with the Debtors, any claim on account of your Trade Claim or related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date, any claim for reclamation or claim under Bankruptcy Code section 503(b)(9), regardless of the statute or other legal authority upon which such Lien or claim may be asserted, and, to the extent you have already obtained or otherwise asserted such a Lien or claim, you shall take (at your own expense) whatever actions are necessary to remove such Lien or withdraw such claim.

(g)  Unless you and the Debtors agree otherwise, any payments received pursuant to this Trade Agreement shall be applied to outstanding prepetition invoices in reverse chronological order, such that payments are first applied to the most recent outstanding invoices.

Your execution of this Agreement and return of the same to the Debtors constitutes an agreement by **[Name of Trade Vendor]** and the Debtors:

to be bound by the Trade Terms and, subject to the reservations set forth in the Order, to the amount of the Payment set forth above;

that **[Name of Trade Vendor]** will continue to supply the Debtors with goods and/or services pursuant to the Trade Terms (as may be modified herein) and that the Debtors will pay for such goods and/or services in accordance with the Trade Terms (as may be modified herein);

[that **[Name of Trade Vendor]** will continue to supply the Debtors' non-Debtor affiliates with goods and/or services pursuant to the Existing Trade Terms;]

that **[Name of Trade Vendor]** has reviewed the terms and provisions of the Order and that it consents to the bound by such terms, except as may be modified herein;

that, except as otherwise agreed by the Debtors and **[Name of Trade Vendor]**, the Payment shall be in complete satisfaction and release of all prepetition claims of **[Name of Trade Vendor]** and **[Name of Trade Vendor]** will not separately file a proof of claim or seek payment on account of its Trade Claim or related in any way to any remaining prepetition amounts allegedly owed to **[Name of Trade Vendor]** by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date;

that if either the Trade Payment Program or your participation therein terminates as provided in the Order, any payments received by you on account of your Trade Claim will be deemed to have been in payment of postpetition obligations owed to you and you will immediately repay to the Debtors any payments made to you on account of your Trade Claim to the extent that the aggregate amount of such payments exceeds such postpetition obligations, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or other defense; and

The Debtors and **[Name of Trade Vendor]** also hereby agree that any dispute with respect to this Agreement, the Order and/or **[Name of Trade Vendor]**'s participation in the Trade Payment Program shall be determined by the Bankruptcy Court.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call [Contact Person] at (___) ___-____.

Very truly yours,

American Apparel, Inc.

By:
Name:
Title:

**EXHIBIT B**

**(PROPOSED INTERIM ORDER)**

# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| AMERICAN APPAREL, INC., *et al.*,[1] | : |
| | :    Case No. 15-12055 (___) |
| Debtors. | : |
| | :    (Joint Administration Requested) |
| | : |

## INTERIM ORDER GRANTING DEBTORS' MOTION FOR ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS

The Court has considered the motion of the Debtors for interim and final orders authorizing, but not directing, the Debtors (i) to pay, in the ordinary course of business, the prepetition claims of certain Critical Vendors and (ii) authorizing financial institutions to honor all related checks and electronic payment requests (the "Motion").[2] The Court has reviewed the Motion and the First Day Declaration and has considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"). The Court has found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. section 157(b), (iv) notice of the Motion and the Hearing was sufficient under the circumstances, and (v) there is good cause to waive the

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Apparel, Inc. (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The address of each of the Debtors is 747 Warehouse Street, Los Angeles, California 90021.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable. After due deliberation, the Court has determined that the relief requested in the Motion is (i) in the best interests of the Debtors, their estates and their creditors and (ii) necessary to prevent immediate and irreparable harm to the Debtors and their estates; and good and sufficient cause having been shown;

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED as set forth herein on an interim basis.

2.    Notwithstanding anything to the contrary contained herein, any payment to be made, and any authorization contained, hereunder shall be subject to the requirements imposed on the Debtors' under any order approving the Debtors' postpetition financing facility (the "DIP Order") and the documentation in respect of the postpetition financing facility (the "DIP Documents"), and nothing herein shall alter the rights of the secured parties under the DIP Order or DIP Documents, and to the extent of any conflict between the terms of this Order and the terms of the DIP Order, the terms of the DIP Order shall govern.

3.    The Debtors are authorized, but not required, to pay, in their discretion, subject to the DIP Order and the DIP Documents, and in the ordinary course of their businesses, the Critical Vendor Claims in an aggregate amount not to exceed the Interim Cap Amount of $4 million. Nothing in this paragraph shall be construed as requiring the Debtors to make a payment to a particular creditor or claimant.

4.    The Debtors may require, and will exercise their good faith efforts to obtain, a Trade Agreement substantially in the form of the letter attached as Exhibit A to the Motion, whereby a Critical Vendor agrees to: (i) the continuance of the parties' existing business relationship; (ii) other business terms on a postpetition basis consistent with past practices, including the pricing of goods and services and the provision of equivalent levels of

service, on terms at least as favorable as those extended in the normal course prior to the Petition Date, or on such other terms that are acceptable to the Debtors; and (iii) the release to the Debtors of goods or other assets owned by the Debtors in the Critical Vendor's possession, if any (collectively, the "Trade Terms"). The Trade Terms shall be applicable throughout the pendency of the Debtors' chapter 11 cases.

5.      If a Critical Vendor that has executed a Trade Agreement accepts a Critical Vendor Payment and fails to provide the Debtors with the requisite Trade Terms specified therein, then (i) any Critical Vendor Payment received by the Critical Vendor may be deemed by the Debtors as an unauthorized postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may either, at the Debtors' option (a) seek to recover from the Critical Vendor in cash or (b) apply against any outstanding administrative claim held by such Critical Vendor and (ii) upon recovery of any Critical Vendor Payment, the corresponding prepetition claim of the Critical Vendor will be reinstated in the amount recovered by the Debtors.

6.      The Banks are authorized, when requested by the Debtors in the Debtors' discretion, to receive, process, honor and pay all postpetition checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to Critical Vendor Claims, provided that funds are available in the Debtors' accounts to cover such checks and fund transfers. The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

7.      Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any

grounds; (iii) a promise to pay any claim; or (iv) an implication or admission that any particular claim against the Debtors is a Critical Vendor Claim or that any Vendor is a Critical Vendor.

8.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

9.     Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

11.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

12.     Any objection to the entry of a final order granting the relief requested in the Motion shall be filed with the Court and served on the Notice Parties no later than _____, 2015, _____.m., prevailing Eastern Time.

13.     A final hearing to resolve any objections to the relief sought in the Motion shall be conducted on _____, 2015 at____.m., prevailing Eastern Time.


Dated: _____        _____
        Wilmington, Delaware            UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

## (PROPOSED FINAL ORDER)

# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| AMERICAN APPAREL, INC., *et al.*[1], | : | Case No. 15-12055 (___) |
|  | : |  |
| Debtors. | : | (Joint Administration Requested) |
|  | : |  |

## FINAL ORDER GRANTING DEBTORS' MOTION FOR ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS

The Court has considered the motion of the Debtors for interim and final orders authorizing, but not directing, the Debtors (i) to pay, in the ordinary course of business, the prepetition claims of certain critical vendors and (ii) authorizing financial institutions to honor all related checks and electronic payment requests (the "Motion").[2] The Court has reviewed the Motion and the First Day Declaration and has considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"). The Court has found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. section 157(b), (iv) notice of the Motion and the Hearing was sufficient under the circumstances, and (v) there is good cause to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable. After due

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Apparel, Inc. (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The address of each of the Debtors is 747 Warehouse Street, Los Angeles California, 90021.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

deliberation, the Court has determined that the relief requested in the Motion is (i) in the best

interests of the Debtors, their estates and their creditors and (ii) necessary to prevent immediate

and irreparable harm to the Debtors and their estates; and good and sufficient cause having been

shown;

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. Notwithstanding anything to the contrary contained herein, any payment

to be made, and any authorization contained, hereunder shall be subject to the requirements

imposed on the Debtors' under any order approving the Debtors' postpetition financing facility

(the "DIP Order") and the documentation in respect of the postpetition financing facility (the

"DIP Documents"), and nothing herein shall alter the rights of the secured parties under the DIP

Order or DIP Documents, and to the extent of any conflict between the terms of this Order and

the terms of the DIP Order, the terms of the DIP Order shall govern.

3. The Debtors are authorized, but not required, to pay, in their discretion,

subject to the DIP Order and the DIP Document, and in the ordinary course of their businesses,

the Critical Vendor Claims in an aggregate amount not to exceed the Final Cap Amount of $5

million.  Nothing in this paragraph shall be construed as requiring the Debtors to make a

payment to a particular creditor or claimant.

4. The Debtors may require, and will exercise their good faith efforts to

obtain, a Trade Agreement substantially in the form of the letter attached as <u>Exhibit A</u> to the

Motion, whereby a Critical Vendor agrees to:  (i) the continuance of the parties' existing

business relationship; (ii) other business terms on a postpetition basis consistent with past

practices, including the pricing of goods and services and the provision of equivalent levels of

service, on terms at least as favorable as those extended in the normal course prior to the Petition

Date, or on such other terms that are acceptable to the Debtors; and (iii) the release to the Debtors of goods or other assets owned by the Debtors in the Critical Vendor's possession, if any (collectively, the "Trade Terms"). The Trade Terms shall be applicable throughout the pendency of the Debtors' chapter 11 cases.

5. If a Critical Vendor that has executed a Trade Agreement accepts a Critical Vendor Payment and fails to provide the Debtors with the requisite Trade Terms specified therein, then (i) any Critical Vendor Payment received by the Critical Vendor may be deemed by the Debtors as an unauthorized postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may either, at the Debtors' option (a) seek to recover from the Critical Vendor in cash or (b) apply against any outstanding administrative claim held by such Critical Vendor and (ii) upon recovery of any Critical Vendor Payment, the corresponding prepetition claim of the Critical Vendor will be reinstated in the amount recovered by the Debtors.

6. The Banks are authorized, when requested by the Debtors in the Debtors' discretion, to receive, process, honor and pay all postpetition checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to Critical Vendor Claims, provided that funds are available in the Debtors' accounts to cover such checks and fund transfers. The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

7. Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any

grounds; (iii) a promise to pay any claim; or (iv) an implication or admission that any particular claim against the Debtors is a Critical Vendor Claim or that any Vendor is a Critical Vendor.

8.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

9.     Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

11.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.


Dated: _____        _____
        Wilmington, Delaware                UNITED STATES BANKRUPTCY JUDGE