## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMERICAN APPAREL, INC., *et al.*,[1] | : | Case No. 15-12055 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## FORMER EMPLOYEE CLAIMANTS' MOTION FOR RELIEF FROM THE
## AUTOMATIC STAY AND/OR RELIEF FROM DISCHARGE INJUNCTION

The former employee claimants identified on the list attached hereto as Exhibit A

(collectively, the "Claimants"), by and through their undersigned counsel, hereby file this *Motion*

*for Relief from the Automatic Stay and/or Relief from Discharge Injunction* (the "Motion").  In

support of this Motion, Claimants assert the following:

### JURISDITICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157 and

1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicate for the relief requested herein is section 362 of title 11 of

the United States Code (the "Bankruptcy Code").

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parenthesis): American Apparel, Inc. (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Furnishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The Address of each of the Debtors is 7447 Warehouse Street, Los Angeles, California 90021.

## BACKGROUND

I.    **General Background**

4.    On October 5, 2015 (the "Petition Date"), the Debtors each filed voluntary petitions of relief under chapter 11 of the Bankruptcy Code.

5.    The Debtors are continuing in possession of their properties and are managing their business, as debtors-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    On October 15, 2015, the United States Trustee appointed an official committee of unsecured creditors (the "Creditors Committee") in these chapter 11 cases.

7.    The Debtors and their non-Debtor affiliates operate a vertically integrated manufacturing, distribution, and retail business focused on branded fashion-basic apparel, employing approximately 8,700 employees across six manufacturing facilities and approximately 230 retail stores in the United States and 17 other countries worldwide.

8.    On October 5, 2015, Debtors filed a "Motion for an Order Authorizing the Debtors to Continue their Insurance Programs and Pay Related Obligations" (the "Insurance Motion"). *See* [D.I. 11].

9.    In the Insurance Motion, the Debtors stated that they maintain insurance policies that provide coverage for various types of liability, including directors and officers and employment practices. *See* [D.I. 1, para. 4]. Debtors' Insurance Motion further stated that "the insurance policies are essential to preserve the Debtors' businesses . . . ." In arguing for said relief from the Court, the Debtors reasoned that satisfying all prepetition insurance obligations will preserve the value of the estate and is in the best interest of all the creditors. *See* [D.I. 1, para. 17].

10.    On October 6, 2015, this Court granted the "Order Authorizing Debtors to Continue their Insurance Programs and Pay Related Obligations." *See* [D.I. 86, 87]. The Order authorized the continued payment of Debtors' insurance programs including continued payment of Debtors' Employment Practices Liability Insurance Policy for the period between January 30, 2013 to January 30, 2014 (the "EPLI Policy"). *See* [D.I. 87].

11.    By order dated January 27, 2016, this Court confirmed the Debtor's First Amended Joint Plan of Reorganization of the Debtors and Debtors in Possession (the "Plan"). *See* [D.I. 687-1].

12.    Pursuant to the Plan, the Superior Court Actions (defined below) would be stayed pursuant to the Plan discharge and injunction. *See generally* Plan, Art IX Effect of Confirmation.

**II.    State Court Action and Claims**

13.    Primarily during the months of August and September of 2015 (with outliers being filed in April, May, and June 2015), several of the Claimants individually filed employment related claims in the Los Angeles Superior Court and the American Arbitration Association (the "Superior Court Actions"). True and accurate copies of such actions are attached hereto as Exhibit B and incorporated herein by reference.[2] Claimants allege in their Complaints that the Debtors committed various employment violations for which the Claimants seek compensation.

14.    Claimants' Superior Actions were stayed in conjunction with the petition for relief filed by the Debtors.

---

[2] Due to its voluminous nature, Exhibit B contains only the case caption and number page. Copies of the complaints are available upon reasonable request to undersigned counsel for the Claimants.

15.     On October 13, 2015, the Debtors filed a "Notice of Bankruptcy Filing/Automatic Stay" in state court.

16.     The Debtors have asserted that the EPLI Policy has a self-insured retention in the amount of $500,000 per claim (the "SIR"). Thus, the Debtors have argued that the Insurer would only be liable for the portions of claims or losses-including defense costs-in excess of the SIR.

17.     On or about December 9, 2015, the Claimants filed proofs of claim in connection with the claims in the Superior Court Actions.

18.     Attached to the proofs of claim were copies of the complaints filed in the Los Angeles Superior Court.

## RELIEF REQUESTED

19.     Through this Motion, the Claimants seek the entry of an order pursuant to section 362(d) of the Bankruptcy Code and 4001 of the Federal Rules of Bankruptcy Procedure, granting the Claimants relief from the automatic stay and/or discharge injunction as to proceed with the Superior Court Actions in the Los Angeles Superior Court.

## BASIS FOR RELIEF REQUESTED

**I.          Good Cause Exists to Lift the Automatic Stay and/or the Discharge Injunction to Permit the Claimants to Proceed with their Superior Court Actions**

20.     Under section 362(d)(1) of the Bankruptcy Code, the Court shall lift the automatic stay for "cause." Section 362(d)(1) of the Bankruptcy Code provides that, on request, "the court shall grant relief from the stay provided under subsection (a) of this section...for cause."

21.     The Bankruptcy code does not define "cause" but whether cause exists to lift the automatic stay should be determined on a case by case basis. *See* In re Rexene Prod. Co., 141 B.R. 574 (Bankr. D. Del. 1992). Under *Rexene,* the balancing test looks at three factors to decide

whether to lift the automatic staying, including: (1) whether prejudice will be caused to the estate or debtor; (b) whether hardship to the movant from continuing the stay outweighs any hardship to the debtor; and (c) whether the movant has a reasonable probability of succeeding on the merits of the suit. *Id.*

22.     Cause exists to grant the Claimants relief from the automatic stay and/or the discharge injunction. The Debtors will not be prejudiced by allowing the Superior Court Actions to proceed in the Los Angeles Superior Court because the claimants are only pursuing the funds from the EPLI Policies. Likewise, by pursing only the funds of the EPLI Polices, there is no hardship to the Debtors in permitting the Claimants to proceed with the Superior Court Actions as any recovery will be issued by the Insurer.

23.     Finally, the hardship to the Claimants of being forced to wait until the bankruptcy process is complete before being able to pursue their claims drastically outweighs all, if any, hardship to the Debtors. Making the Claimants wait to prosecute the Superior Court Actions puts them at a considerable disadvantage due to the preservation of evidence and loss of witnesses, as well as the length of time to receive a final award. In the case at bar, the *Rexene* balancing test demonstrates that cause exists to lift the automatic stay and/or discharge injunction.

24.     In determining whether cause exists to allow litigation in another forum to continue, the list of non-exclusive factors set forth in In re Sonnax Industries Inc., 907 F .2d 1280, 1286 (2d Cir. 1990), *quoting* In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984), has been adopted by a number of courts. *Curtis* articulated the following factors:

(1)     Whether the relief will result in a partial or complete resolution of the issues;

(2)     The lack of any connection with or interference with the bankruptcy case;

(3)    Whether the foreign proceeding involves the debtor as a fiduciary;

(4)    Whether a specialized tribunal has been established to hear the particular cause of action and whether the tribunal has the expertise to hear such cases;

(5)    Whether the debtor's insurer has assumed full responsibility for defending it;

(6)    Whether the action primarily involves third parties;

(7)    Whether litigation in another forum would prejudice the interests of the other creditors;

(8)    Whether the judgment claim arising from the other action is subject to equitable subordination;

(9)    Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)    The interests of judicial economy and the expeditious and economical resolution of litigation;

(11)    Whether the parties are ready for trial in the other proceeding; and

(12)    The impact of the stay on the parties and the balance of the harms.

See Id. at 799-800.

25.    Here, the factors weigh heavily in favor of lifting the automatic stay and/or discharge injunction to allow the Claimants' Superior Court Actions to proceed in California. While each factor is important, this Motion elaborates on the factors that heavily impact the case at bar. In weighing these factors, Courts consider those factors that are relevant to the particular case at issue and do not assign equal weight to each factor. In re Mezzeo, 167 F. 3d 139, 143 (2d Cir. 1999).

26.     Factor number one, addressing whether relief will result in a partial or complete resolution of the issues, is satisfied because by allowing the Claimants' cases to proceed in the Los Angeles Superior Court a complete resolution of their claims against the Debtors will result.

27.     Factor number two, regarding whether the Superior Court proceedings are connected with or will interfere with the bankruptcy estate, also supports lifting the stay. The Claimants seek to liquidate their claims in the Los Angeles Superior Court in order to recover under the applicable insurance policies and from other non-debtor sources. Numerous Courts have permitted the stay to be lifted when the movant is simply seeking to establish the fact and amount of the debtor's liability and the Movant has stipulated that any recovery will be sought from the debtor's insurer or a co-defendant. In re Peterson, 116 B.R. 247, 250-51 (D. Colo. 1990).  In such cases, there can be no legitimate complaint that the estate will be dissipated by allowing the litigation to move forward. In re 15375 Memorial Corp., 382 B.B. 652, 689 (Bankr. D. Del. 2008); see In re Grace Indus., Inc. 341 B.R. 399, 405 (Bankr. E.D.N.Y. 2006) ("Where the Plaintiffs have agreed that they will not seek any recovery from estate assets, there is no basis for continuing the automatic stay"); see, In re Todd Shipyards Corp.,92 B.R. 600, (Bankr. D.N.J. 1988) ("Since the  movants only seek to litigate their claims and obtain proceeds through the debtor's available insurance coverage and do not seek relief from the stay in order to attach the property of the debtor, such relief does not interfere with the bankruptcy proceedings"). By limiting the Claimants' damages to the policy limits, the Claimants' claims will not in any way interfere with the claims of other creditors against the Debtors' bankruptcy estate. Supporting this position, the Debtors' plan of reorganization (the "Plan") is nearly confirmed further minimizing the risk that this Motion will interfere with the Debtors' efforts and attention otherwise devoted to getting the Plan confirmed.

28.    Regarding factor number five, addressing whether the Debtors' insurer has assumed full responsibility for defending it, arguably the most significant factor in the case at bar, the Debtors' insurer has assumed full responsibility in defending it. As aforementioned, the Debtors filed a motion with this Court requesting the Court to allow them to continue insurance programs and related pay obligations, including the EPLI Policy. *See* [D.I. 11, 86, 87].   The Debtors filed their motion for continuing their insurance programs and payment obligations approximately one week prior to filing the stay on the Superior Court Actions.   The Debtors cannot argue that they should be able to continue their insurance programs and related payment obligations, which were continued to cover claims like these, but then stay all proceedings related to claims covered by their insurance policies. Continuing these insurance programs is in the best interest of all the creditors and the bankruptcy estate. Courts have often permitted movants to pursue their state claims against debtors when recovery would be against an insurance company rather than the debtor itself. In re Donington, Karcher, Salmond, 194 B.R. 750 (D.N.J. 1996); *see also* In re Robertson, 244 B.R. 880 (N.D. Georgia 2000) ("Neither bankruptcy estate nor debtor would suffer by permitting movant to prosecute tort action for which liability insurance was available").

29.    Factor number six, concerning whether the action primarily involves third parties, is also satisfied with respect the Superior Court Actions as none of the Claimants are parties to the bankruptcy action insofar as they relate to these employment claims.

30.    Factor number seven, addressing the concern of prejudicing the interests of other creditors is also a non-issue in the case at bar.  The Claimants will collect any judgment against the Debtors solely from the applicable insurance proceeds and/or other non-debtor sources. Thus, the other creditors in the bankruptcy will not be harmed by granting the motion because the

Claimants will not be able to enforce any judgment directly against the Debtors or their estate. *See* R.J. Grover Construction, 411 B.R. at 465; *see* In re Loudon, 284 B.R. 106, 108 (8th Cir. B.A. P. 2002); *see* In re G.S. Distribution, Inc., 331 B.R. 552, 567-68 (Bankr. S.D.N.Y. 2005) (finding no prejudice to creditors from lifting the stay because Movant will not be able to enforce judgment without permission of Bankruptcy Court); *see* In re 15375 Memorial Corp., 382 B.R. at 690 (lifting the stay because Movants "recovery against available insurance proceeds will in no way negatively impact the rights of the handful of other creditors in these cases").

31.     Additionally, factor number ten, regarding the interest of judicial economy and the expeditious and economical resolution of litigation support lifting the stay and allowing the Superior Court Actions to proceed. By proceeding with the Superior Court Actions, the Los Angeles Superior Court can quickly and efficiently address the employment disputes in a proper venue. There is no reason why the litigation should not promptly resume and the stay be lifted, especially in light of the fact that any recovery would be paid from the Debtors' insurance carrier and would not affect Debtors' other creditors in this case. Once the litigation recommences, it would result in the complete resolution of the Claimants' claims against the Defendants as it relates to the wrongful termination claims. Accordingly, the interest of judicial economy weighs in favor of resolving the Claimants' claims in the Los Angeles Superior Court.

32.     Factor number eleven, addressing whether the parties are ready for trial in the other proceedings, is satisfied as the Claimants' have already gathered all necessary documentation, retained counsel, and filed the actions in the Los Angeles Superior Court.

33.     Finally, factor number twelve, regarding the balance of the impact of the stay on the parties and the balance of the harms, the scale is tilted completely in favor of the Claimants. Any proceeds from the Claimants' litigation would be paid by the EPLI Policy and would not

have any impact to the Debtors, and thus, the Debtors would never be harmed. To the contrary, the Claimants may effectively be harmed by delaying the Superior Court Actions. The mere existence of a bankruptcy action does not deny the Movant the opportunity to prosecute his case. In re Brock Laundry Machine Co., 37 B.R. 564, 566-67 (Bankr. N.D. Ohio 1984). Courts have found that making a plaintiff wait to prosecute a claim puts them at a considerable disadvantage due to the preservation of evidence and loss of witnesses, as well as the length of time to receive a final award. Id. Therefore, courts lift the stay under §362(d) and allow Movant/Plaintiff to recover under any applicable insurance policy coverage. Id.

34.    The Debtors should not be shielded by the automatic stay and/or discharge injunction to the detriment of former employees with valid employment claims. An insurance company's contractual obligations should not be disturbed due to their insured's bankruptcy proceeding. Royal Ins. Co. of Am. v. McCrory Corp., 94 CIV. 5734 (SS), 1996 WL 205582 (S.D.N.Y. 1996). The automatic stay was never intended to preclude a determination of tort liability and the attendant damages. It was merely intended to prevent a prejudicial dissipation of a Debtor's assets." In re Brock Laundry Machine Co., 37 B.R. at 567. The policy of bankruptcy law is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured. In re Jet Florida Systems, Inc., 883 F.2d 970, 975 (11th Cir. 1989).

35.    The Claimants believe the interest of judicial economy will be served by lifting the stay and/or discharge injunction to permit the Superior Court Actions to continue, and, if successful, proceed against the Debtors' insurance liability carrier for an award of damages, if any.

## CONCLUSION

36.    Accordingly, cause exists to lift the automatic stay and/or discharge injunction and permit Claimants to proceed with the Superior Court Actions.

**WHEREFORE**, the Claimants respectfully request that the Court grant this Motion for Relief from the Automatic Stay and/or Discharge Injunction, enter an order substantially in the form attached hereto, and grant the Claimants such other relief as the Court deems just and proper.

Dated:  February 3, 2016
         Wilmington, DE

                                        GELLERT SCALI BUSENKELL &
                                        BROWN LLC

                                        Michael Busenkell (DE 3933)
                                        Evan Rassman (DE 6111)
                                        1201 N. Market Street, Suite 300
                                        Wilmington, DE 19801
                                        Phone:  (302) 425-5812
                                        Fax: (302) 425-5814
                                        mbusenkell@gsbblaw.com
                                        erassman@gsbblaw.com

                                        *Attorneys for Former Claimants*